THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JERRY REDMOND, Defendant-Appellant.

Second District   No. 79-208

Opinion filed June 27, 1980.

David C. Thomas, of Chicago-Kent College of Law, of Chicago, for appellant.

Gene Armentrout, State's Attorney, of Geneva (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

Defendant, Jerry Redmond, was convicted in 1976 of the offense of indecent liberties with a child and was sentenced to five years' probation. A petition to revoke probation was subsequently filed, alleging that defendant had committed two rapes and an armed robbery. A revocation

hearing was held, after which the hearing judge found that the State had proved by a preponderance of the evidence that defendant had committed armed robbery against Susan Johnson. Defendant was resentenced to a determinate term of six years. On appeal, defendant contends (1) that he was denied his sixth amendment right to counsel at a prehearing lineup; (2) that he was denied his fifth amendment right to due process by the holding of a suggestive and untrustworthy identification lineup; and (3) that he was not shown by a preponderance of the evidence to have committed armed robbery.

At the revocation hearing, Mary McWethy and Darlene Albertson testified as to incidents in which each had been raped by an intruder in her home. Police took several items from Albertson's apartment and tested blood stains thereon. Palm and fingerprints were also taken, as were hair samples found in both apartments and on the bodies of both rape victims. After all the evidence was presented, the hearing judge concluded that the evidence did not sufficiently prove that defendant had committed either rape.

Susan Johnson testified at the revocation hearing that, on August 2, 1978, at approximately 2 o'clock or 2:30 a.m., she was asleep on a couch in her living room when she awoke to see a black man standing approximately two feet away. The man approached her, held a knife to her throat and spoke some threatening words to her. The room was lit by a lamp and the television set; however, she was only able to see the man for approximately three seconds before he put a scarf over her face. The man took some money from her purse and reached for her nightie, at which time she screamed. Her two daughters then came downstairs and the three women fled through the front door. After the incident, Ms. Johnson was only able to describe the intruder to police as a black man, approximately 19 years of age. No scientific evidence was taken at the scene. Later in August Ms. Johnson viewed six photographs, including the defendant's, at the Aurora police department. After approximately five minutes, she selected the photo of one James Wade, as she "thought" that he was the intruder.

Defendant initially testified at the hearing that he was at home during the entire evening and morning of the robbery; that testimony was corroborated by defendant's mother, with whom he lived. The State, however, introduced evidence that a police officer had seen and stopped the defendant, who was driving a car with a broken headlight, at approximately 12:20 a.m. on August 2. No arrest was made. Defendant subsequently testified that he did remember the incident and that he had gone directly home afterward.

Eight days after his arrest and prior to the revocation hearing, defendant had been placed in a lineup at the Aurora police department.

McWethy, Johnson, Albertson, and an unnamed complainant, together with several of their friends and/or relatives, viewed the lineup together. Each of the five men in the lineup was black, was dressed in red coveralls and was similar to defendant in height and weight. Each man was required to take one step forward, turn, and state "John, are you there?" (a statement repeated by the intruder during the McWethy rape). The voice was communicated by microphone to the witnesses who were seated in a small room and who viewed the lineup through a glass window. Ms. Johnson testified that all four women were told not to talk to anyone in the viewing room and that they did not do so then or afterwards. She testified that she chose defendant in the lineup because of his voice and his profile, and that after the lineup she was positive that defendant was the intruder. When the sergeant asked if anyone could identify anyone in the lineup, one witness, who apparently was Ms. Johnson, indicated the defendant, after which the other witnesses also chose defendant.

Defendant first contends that he did not receive a fair hearing in that he was denied his sixth amendment right to counsel at the prehearing lineup. Defendant argues that, even if he did not request an attorney prior to the lineup, he should have been advised of his right to counsel at that time. Thus, defendant contends, the lineup identification was inadmissible at his revocation hearing. The State contends that defendant was aware of his right to counsel and that, even if his rights were technically violated, a new hearing is not required because the lineup identification was nevertheless admissible at the hearing.

An accused charged with an offense punishable by imprisonment clearly has a right to be represented by counsel at all critical stages of proceedings, that is, when the accused may be prejudiced so as to infect his subsequent trial with the absence of fundamental fairness. (*People v. Jones* (1976), 36 Ill. App. 3d 190, 343 N.E.2d 644; *People v. Morris* (1964), 30 Ill. 2d 406, 197 N.E.2d 433.) This court has held that the right to counsel does exist at any pretrial lineup. (*People v. Dismuke* (1972), 3 Ill. App. 3d 553, 278 N.E.2d 152.) However, the same rules do not always apply in probation revocation hearings as apply in criminal trials. In *People v. Dowery* (1975), 62 Ill. 2d 200, 340 N.E.2d 529, the supreme court held that the fourth amendment exclusionary rule is not applicable to probation revocation hearings. The objective of that rule is to discourage improper police procedures. The evidence which would normally be inadmissible under the rule is not patently "untrustworthy," and is admissible in a revocation hearing because all reliable evidence should be available to the hearing judge. However, in *People v. Bell* (1977), 50 Ill. App. 3d 82, 365 N.E.2d 203, the court refused to extend the *Dowery* principle to fifth and sixth amendment violations, reasoning that an involuntary confession,

unlike evidence obtained in an illegal search and seizure, could indeed be untrustworthy, and thus should not be admissible at a revocation hearing. This principle was applied in *People v. Peterson* (1978), 74 Ill. 2d 478, 384 N.E.2d 348, where the supreme court held that if a confession was, in fact, involuntary, it was not a "mere technical violation" as was the *Miranda* violation in *Dowery* and the confession should not be admissible at a probation revocation hearing. The general principle to be derived from these cases appears to be that evidence obtained in technical violation of constitutional rights can be introduced at a probation revocation hearing, if that evidence is shown to be probative and trustworthy. In the instant case, then, the right to counsel did exist at defendant's prehearing lineup. However, even if that right was violated, the identification testimony would still be admissible at the hearing if it is shown to have been "trustworthy."

■■ We find, however, that we need not determine in this case whether or not the lineup identification was "trustworthy," since the record does not indicate that defendant requested counsel until after the prehearing lineup. The existence of the right to counsel does not depend upon a request by the defendant (*People v. Varney* (1978), 58 Ill. App. 3d 70, 373 N.E.2d 1033); however, the law does not require police officers to affirmatively admonish a defendant of his right to counsel at each step in all official proceedings. Once a defendant is aware of his right to counsel, if he chooses not to speak up and request such counsel, the right is not violated. (See *People v. Burbank* (1972), 53 Ill. 2d 261, 291 N.E.2d 161.) In this case, defendant had spoken with an investigator from the public defender's office immediately prior to the lineup, and could have requested the investigator, or any other official in the vicinity, to provide him with counsel at that time. There is no evidence that defendant did so. Instead, defendant waited until after the lineup to ask for a lawyer, at which time a public defender was appointed. We conclude that defendant was not entitled to a specific admonishment as to his rights immediately prior to the lineup, and that, since no request was made, defendant's right to counsel was not violated.

■■ Defendant argued at trial, and argues on appeal, that the lineup procedure was suggestive and that therefore the introduction of evidence of his identification at the hearing denied him due process of law. He points out that the identification was primarily based on voice identity and contends that the lineup was suggestive in that the participants were speaking through a microphone, the witnesses did not turn their backs to the participants, and the other men were not selected on the basis of voice similarity. In addition, we note that the four witnesses to the lineup viewed and identified the defendant in the presence of each other. It has been held that such an identification procedure is suggestive, although the

suggestiveness does not require reversal if there was little likelihood of a mistaken identification. (*People v. Burbank* (1972), 53 Ill. 2d 261, 291 N.E.2d 161.) Although defendant did not raise this particular point at trial, a reviewing court can consider matters not argued below if the matter could result in substantial prejudice to defendant's rights; thus, the viewing and identification procedure may properly be considered by this court. *People v. Niebes* (1979), 69 Ill. App. 3d 381, 387 N.E.2d 800.

The evidence presented at the hearing which related to the armed robbery charge primarily consisted of the testimony of Susan Johnson. Therefore, whether defendant was denied due process initially depends upon whether there was a likelihood of mistaken identification of defendant by Ms. Johnson at the lineup. Further, even if the lineup were found to be suggestive, defendant was not denied due process if the record reveals a sufficient independent basis, free of improper suggestiveness, for her identification. *People v. Seets* (1976), 37 Ill. App. 3d 369, 346 N.E.2d 61.

■ Although the challenged defects in the lineup procedure regarding voice identification do not appear so substantial as to render the lineup suggestive, the procedure followed here of allowing the witnesses to view and identify the defendant in the presence of each other presents a potentially suggestive situation. However, Ms. Johnson did testify that she did not have any discussion with the other witnesses before, during or after the lineup. In addition, it appears from the record that, when the witnesses were asked if they could identify anyone, it was Ms. Johnson who first responded by choosing the defendant. Therefore, any presumption of suggestiveness in the identification procedure here could be rebutted by evidence in the record that the situation did not, in fact, induce any prejudice to defendant in his identification by Ms. Johnson.

Furthermore, the record discloses that Ms. Johnson's identification, both at the lineup and in court, rested on a sufficiently nonsuggestive independent basis. Factors to be considered in determining whether an identification had an independent origin were set out in *United States v. Wade* (1967), 388 U.S. 218, 241, 18 L. Ed. 2d 1149, 1165, 87 S. Ct. 1926, 1940:

> "[F]or example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification."

In this case, Ms. Johnson testified that she only saw defendant's face during the robbery for about three seconds; however, her testimony

revealed that light in the room was provided by a lamp and a television set and was, in fact, sufficient to allow her to see the defendant clearly. The lineup identification took place less than a month after the robbery. Prior to the lineup, Ms. Johnson did fail to choose defendant's picture from the photographic lineup and, in fact, chose that of another man. However, her identification of defendant was based on her recognition of defendant's voice and profile at the lineup; she testified that after the lineup she was positive that defendant was the intruder.

■■ Under the circumstances here presented, we believe that, regardless of whether the viewing procedure at the lineup was suggestive, the defendant was not denied due process. Not only was there little likelihood of a mistaken identification at the lineup, but the record indicates an independent and sufficiently reliable basis for Ms. Johnson's identification of defendant.

■■ We further find that the State did prove defendant's guilt of the armed robbery by a preponderance of the evidence. The trial court considered the factors of Ms. Johnson's direct testimony, the incident placing defendant in the vicinity of the robbery approximately one and a half to two hours prior to the robbery, and "defendant's somewhat spoiled alibi," as indicating that the State had met its burden not only by a preponderance of the evidence but by clear and convincing evidence. As we have determined that Ms. Johnson's identification of defendant was not tainted, her testimony was properly considered in conjunction with other evidence presented at trial. Thus there is sufficient basis in the record for holding that the trial court's finding was not against the manifest weight of the evidence.

Accordingly, the judgment of the trial court revoking defendant's probation and resentencing defendant to a term of six years is affirmed.

Affirmed.

VAN DEUSEN and UNVERZAGT, JJ., concur.