THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MICHAEL SWIFT, Defendant-Appellant.

Third District    No. 78-377

Opinion filed December 23, 1980.

Robert Agostinelli and Peter A. Carusona, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Will County finding defendant, Michael Swift, guilty of aggravated battery and robbery. On November 30, 1977, Bernard Rickerman collected the rent from apartments which he owned. He came home between 10:30 and 11 a.m. and went directly to his garage. While he was in the garage, two black men suddenly appeared. Rickerman recognized one of the two men and identified him at trial as being the defendant. Rickerman stated he knew the defendant because the defendant frequently visited apartments which Rickerman owned. Rickerman said hello to the two men and asked them if they were looking for or needed any furniture. He had a conversation with the men regarding furniture and then turned his back to them to remove a half bushel of pears. Almost immediately after he bent over to pick up the pears, Rickerman was hit on the head. He was stunned and fell to the ground. He kicked and swore at them. He then lost consciousness. He did not know who hit him. When Rickerman regained

consciousness he was alone. His wallet, containing about $200, was missing. He crawled from the garage to his house and called his daughter-in-law, who took him to the hospital. He stayed there for 24 days.

On January 8, 1978, he met with Detective Gerdes twice. The first time Gerdes showed him over 100 photographs. The second time he showed him six photographs. Rickerman picked out one and indicated it seemed very close to what the criminal looked like.

Defendant was formally charged on January 17, 1978, with aggravated battery and robbery. On January 23, 1978, Rickerman observed a five-person lineup and positively identified the defendant as the one who was in the garage. On February 15, 1978, defendant was indicted. Prior to trial, defendant filed a motion to suppress any testimony relating to the lineup identification on the ground that the defendant did not have counsel present at the lineup. After a hearing, the motion was denied.

Defendant's cause proceeded to trial before a jury on May 2, 1978. These proceedings ended in a mistrial because the jury was hopelessly deadlocked. On June 5, 1978, a second jury was selected. At the second trial, the sole question was whether defendant was one of the two individuals in the garage with Rickerman. During the trial, several witnesses were called by the State and by the defense. Rickerman testified as to what happened to him, that he had identified the defendant in the lineup and identified the defendant in court as one of the men involved. He said that he had seen the defendant approximately 20 times before the occurrence because defendant frequently visited one of the tenants, Bruce Richards, in an apartment building he owned. Further, he testified that defendant had previously helped him move some furniture.

Detective Gerdes testified that he had shown Rickerman photographs on January 8 and that Rickerman had picked out defendant's picture, saying it was very close and it could be him. Gerdes said the photograph he showed to Rickerman on January 8 looked similar to the way the defendant looked at trial.

Paul Ward also testified for the State. He said that on October 7, 1977, he had a conversation with defendant in Ward's apartment. Ward testified the defendant stated that Rickerman had a lot of money and defendant would like to rob him. Ward indicated that the defendant never said he was actually going to rob Rickerman, but merely told him a plan he would use if he did rob him. Ward saw Rickerman two or three times a week. On cross-examination, Ward testified he had been subpoenaed by the State to testify and he had a burglary charge pending against him. He also testified he hadn't been promised anything in exchange for his testimony.

Lisa Ward, Paul's sister, testified that she had had a conversation with

defendant. They spoke about her brother and his apartment. Lisa said that defendant stated he had "ripped some money off" Rickerman.

Anna Rogers was the final witness to testify for the State. She was passing by Rickerman's apartment building at the time of the robbery and saw two black men standing nearby. She identified the defendant as one of the two persons she had seen. Shortly after the beginning of cross-examination, the jury was taken out. Defense counsel and the prosecutor both stated they had not expected Rogers to identify the defendant. The jury returned and on cross-examination Rogers testified that at a lineup she had been unable to identify defendant and that she had earlier told defense counsel she couldn't identify the men in front of Rickerman's home. After Rogers' testimony the State rested.

The defense called several witnesses. Various police officers testified that Rickerman had not seen who struck him, that he hadn't been entirely sure of his identification of defendant when looking through the photographs with Detective Gerdes and that Rogers had been unable to previously identify the defendant at the lineup or by using photographs.

The defendant's fiancée, Shirley Brown, testified that on the morning of the robbery, the defendant had met her at her high school at approximately 11. She testified he was not out of breath, nor were his clothes messed up or bloodied and that the defendant acted normal. She also testified that in the jailhouse visiting room, she heard Paul Ward say he hadn't made a statement, although she did not know what kind of statement it was.

Joseph DeFoe also testified with regard to this conversation. DeFoe was confined in the Will County Jail. DeFoe testified he overheard a conversation between Ward and defendant in which Ward said that he didn't mean to make the statement to police but "they forced him."

The defendant then testified in his own behalf. He denied being in Rickerman's garage on November 30, 1977, or any other time and said he had only met Rickerman once. He denied knowing Bruce Richards and denied having ever helped Rickerman move furniture. He testified that he had never stated he wanted to rob Rickerman. He said he had only seen Rickerman once and it was not possible Rickerman could have seen him 25 to 30 times.

Bruce Richards testified that he did not know the defendant and did not recall ever seeing the defendant at the apartments. Nailer Jeffrey was the final witness for the defendant and he testified that he had had a conversation with Paul Ward in which Ward said he was going to testify against defendant so that the charge against him would be lessened. After the trial, the jury returned verdicts of guilty of robbery and guilty of aggravated battery.

On appeal, defendant raises several issues. We need discuss only two of them: (1) whether the trial court erred in denying defendant's motion to suppress the lineup identification; and (2) whether the defendant was not proven guilty beyond a reasonable doubt.

Regarding the defendant's first issue, we believe it was prejudicial error for the court to deny the defendant's motion to suppress the out-of-court lineup identification. In *Gilbert v. California* (1967), 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951, and its companion case, *United States v. Wade* (1967), 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926, the Supreme Court held that a pretrial corporeal identification conducted after a suspect has been indicted is a critical stage in a criminal prosecution at which the sixth amendment entitles the accused to the presence of counsel. *Gilbert* further announced a *per se* exclusionary rule of all testimony that a witness identified the accused at an uncounseled corpo-. real lineup. Subsequently in *Kirby v. Illinois* (1972), 406 U.S. 682, 32 L. Ed. 2d 411, 92 S. Ct. 1877, the plurality opinion clarified that the right to counsel announced in *Gilbert* and *Wade* attached to corporeal identifications conducted "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information or arraignment." 406 U.S. 682, 689, 32 L. Ed. 2d 411, 417, 92 S. Ct. 1877, 1882; see *Moore v. Illinois* (1977), 434 U.S. 220, 224-27, 54 L. Ed. 2d 424, 431-32, 98 S. Ct. 458, 462-64.

In the instant case at the time of the lineup, defendant had been formally charged with robbery and aggravated battery. Therefore, the *per se* exclusionary rule announced in *Gilbert* is applicable to the situation before us. Defendant was placed in a lineup and identified without the benefit of counsel. Therefore any testimony regarding this identification must be suppressed.

The State concedes the defendant had the right to counsel but contends the defendant waived it. The State argues that defendant had been informed of his right to counsel and since he failed to request counsel he waived this right. We disagree.

Waiver is the voluntary relinquishment of a known right. The State had the burden of proving the defendant waived his right to counsel and we believe the State has failed to meet this burden. While in some instances, the conduct of an accused is an effective waiver (*e.g., People v. Redmond* (1980), 85 Ill. App. 3d 599, 407 N.E.2d 132), we believe the circumstances in the case at bar do not show the defendant voluntarily relinquished the right to counsel. It is undisputed that at first the defendant refused to go to the lineup. Accordingly, he was handcuffed and carried part of the way to the room where the lineup was conducted. Under such circumstances we do not believe the defendant voluntarily

agreed to be in a lineup absent counsel and therefore testimony regarding an identification in the lineup should have been suppressed.

We believe the error in admitting this evidence was prejudicial and requires a new trial. The case at bar was a close one. The first trial ended in a mistrial, and in the second trial there was a long deliberation by the jury. Many of the State's witnesses were impeached, and even Rickerman's testimony contained some inconsistencies. The key factor was Rickerman's identification of the defendant. There was much emphasis placed on Rickerman's identification of the defendant in the lineup. Rickerman testified to it, Gerdes testified that Rickerman identified the defendant, and the prosecutor emphasized this point in closing arguments. Where a case is as close as this one, we are not satisfied beyond a reasonable doubt that the error did not contribute to the defendant's conviction. There is a reasonable possibility the lineup identification might have contributed to the conviction. (*People v. Green* (1979), 74 Ill. 2d 444, 386 N.E.2d 272.) Therefore, we believe it was prejudicial error to admit the testimony.

Before we can remand the case to the trial court, however, double jeopardy considerations require that we determine whether or not the defendant was proven guilty beyond a reasonable doubt. Defendant contends he was not proven guilty beyond a reasonable doubt because each of the State's witnesses was impeached. Rogers' identification was impeached. Ward's testimony regarding defendant's statements about robbing Rickerman was impeached. Even some of Rickerman's testimony was inconsistent. However, the weight to be given to each witness' testimony is a question for the trier of fact, and the jury's determination cannot be reversed upon appeal unless it is manifestly erroneous. We believe there was sufficient evidence presented on which the jury could find the defendant guilty beyond a reasonable doubt. Therefore, we do not simply reverse defendant's conviction on this issue.

However, because there was prejudicial error in admitting the testimony regarding the lineup identification, we reverse the judgment of the circuit court of Will County and remand for a new trial.

Reversed and remanded.

ALLOY, P. J., and SCOTT, J., concur.