THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
WILLIE LASLEY *et al.*, Defendants-Appellants.

First District (3rd Division) Nos. 84—0471, 84—0638 cons.

Opinion filed June 3, 1987.—Rehearing denied August 12, 1987.

616

James J. Doherty, Public Defender, of Chicago (Alison J. Norwood, Assistant Public Defender, and Daniel E. Radokovich, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Peter D. Fischer, and Craig M. Antas, Assistant State's Attorneys, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

Defendants, Willie Lasley and Ivory Lloyd, were indicted on charges of murder, armed robbery, and armed violence resulting from the holdup of a grocery store in which the owner was shot and killed. Their trials were held before the same judge with separate juries. Both defendants were found guilty of murder and armed robbery. Each was sentenced to 40 years in the Illinois Department of Corrections for murder and 30 years for armed robbery to run concurrently. Defendants appeal their convictions.

The facts of the case pertinent to this appeal are as follows. On the morning of May 9, 1982, Craig Courts took a taxi to his job as a butcher at the United Life Grocery, located at 218 North Homan Avenue in Chicago. Prior to entering the store, Courts asked the cab driver to drive by so that he could see if his boss, Fathe Salem, was in. Courts then made a call from a nearby telephone booth. As he approached the store, he saw the defendants behind him. The defendants followed him into the store as he entered. Salem asked Courts to

take care of a customer at the meat counter. Courts testified he then heard someone say "stick-up." He turned and saw Lloyd standing at the cash register facing Salem and holding a gun. As Salem reached for his own gun, Lloyd shot him, as did Lasley, who had been standing by the entrance telling people the store was closed.

Courts further testified that after Salem fell to the floor, Lloyd searched his pockets while Lasley continued to stand by the door. Lloyd proceeded to take the contents of the cash register. He then informed Courts he would kill him unless he indicated where the victim kept additional money. Courts testified that he pointed to an upstairs area. Lloyd went upstairs and returned 5 to 10 minutes later with a bag. He then took Courts by the hand and led him to the lottery machine in the store. When Courts informed Lloyd he did not know how to work the machine, Lloyd began to beat at it. When his efforts proved unsuccessful, Lasley demanded they leave. Lloyd ordered Courts to lie down in the area near the cash register, and the defendants then left the store.

Ms. Jesse Bennett was the customer Courts was waiting on when the incident occurred. She lay on the floor as instructed by the robbers and left the store immediately after they left. Courts proceeded to call his mother and asked her to phone the police. The police arrived within a short time and began their investigation. Officer O'Connor of the Chicago police department testified that, during his first interview with Courts, Courts denied knowing who the offenders were. He also told the officer that he took a taxi to work on the morning in question, and the driver left him off in front of the store. O'Connor did not believe Courts and, after interviewing the taxi driver, learned that he left Courts at a phone booth around the corner from the store and saw Courts walk over to the store after making a call. When O'Connor confronted Courts with this information, Courts told him that he lied because he was afraid and confused, which the officer indicated he believed.

Two days after the incident, Courts and Ms. Bennett were asked to come to the police station to observe a lineup and some photographs. After viewing the lineup, Courts identified Lasley as the person who stood by the door telling customers the grocery store was closed. Courts looked at several black-and-white photographs and identified Lloyd as the man who shot the victim. Ms. Bennett was unable to positively identify anyone in the lineup; however, she did identify Lasley as being the same size as someone she saw participate in the robbery and murder. When she saw the lineup photo, she identified him as the man in "the green suit" near the counter. Warrants

were issued for the arrest of Lloyd and Lasley. On cross-examination, Ms. Bennett stated that an assistant State's Attorney had shown her the lineup photo earlier in the day and, at that time, it contained a red "X" above Lasley which Courts placed upon it during the trial.

On November 28, 1982, Officer Wallace of the Chicago police department responded to a call regarding a home invasion in progress at 1359 North Hudson in Chicago. He testified that, upon his arrival, he saw Lloyd coming out of a courtyard at 1361 North Hudson. Lloyd began to flee when he spotted the officers, and they later found him hiding on the roof of the building. When the police returned to the home of the woman who phoned in the complaint, they learned she was Lloyd's former girlfriend, LaFondraetta Lanier. Ms. Lanier testified that she called the police because she was afraid Lloyd would get into her apartment. When they arrived, she informed them Lloyd was wanted for murder and armed robbery.

At trial, Ms. Lanier further testified that the defendants had a conversation in her apartment two days before the victim was murdered in which they discussed a previous robbery and the need to help get someone out of jail. The following day she also heard them discuss the fact that they needed money for this purpose and that they knew someone who worked in a store where they could easily get the money. She stated that Lloyd was at her apartment on the day of the murder from approximately 6 a.m. until 7 a.m. and that, when he left, he informed her he was going to perform the job which they had been planning. Lanier indicated Lloyd was wearing green army fatigues when he left her apartment that morning. The first time she told anyone of the conversations between defendants, however, was not until after her relationship with Lloyd ended.

Although at trial Courts testified he still was standing after the first shots were fired in the grocery store, he admitted he told three detectives on the day of the incident that he did not see anything in the store after the first shot was fired because he immediately hit the ground. On cross-examination by Lasley's attorney, Courts also conceded he did not give Lasley's and Lloyd's names to the police or tell anyone Lloyd was the offender up until November, when Lloyd was arrested. Courts admitted he was the "inside man" in the robbery. He stated he learned about the plan approximately three weeks prior to the occurrence while at the home of Darnell Williams. Both defendants also were there at that time. They told him he would not have to worry about anything and he would not be hurt. Additionally, according to Courts, they threatened to kill him if he informed the police. Courts indicated this was why he initially was not truthful with the

police. He claimed that he informed the prosecutors he was involved in the robbery. On the basis that the State withheld this information from defendants, counsel for Lasley moved for a mistrial. The court denied the motion. After several other witnesses testified, the juries found both defendants guilty of the armed robbery and murder charges.

On appeal, defendant Ivory Lloyd contends: (1) the trial court erred when it denied the motion to suppress his lineup identification because he was placed in the lineup in violation of his sixth amendment right to counsel; (2) he was denied due process where the State's primary identification witness offered the Lloyd jury perjured testimony and where the closing arguments compounded the prejudice by convincing the jury that the witness did not lie to them, and (3) the trial court committed reversible error when it permitted the State to elicit testimony and to argue that another unrelated armed robbery and Lloyd's reputed gang membership were probative of his guilt. Defendant Willie Lasley contends: (1) the State deprived him of a fair trial by repeatedly arguing facts not in evidence before the Lasley jury and by other deliberate acts of misconduct during rebuttal arguments, and (2) the trial court erred in denying his motion for a mistrial based upon the State's withholding information regarding Courts' participation in the crime.

■ Defendant Lloyd first contends the trial court erred in denying his motion to suppress the lineup identification because the police violated his sixth amendment right to counsel. Because adversarial judicial proceedings were initiated against defendant prior to the lineup, his sixth amendment right to counsel already had attached. (*Kirby v. Illinois* (1972), 406 U.S. 682, 689, 32 L. Ed. 411, 417, 92 S. Ct. 1877, 1882; *People v. Martin* (1984), 102 Ill. 2d 412, 419, 466 N.E.2d 118, *cert. denied* (1984), 469 U.S. 935, 83 L. Ed. 2d 270, 105 S. Ct. 334.) In order to waive that right, defendant must have known about it and must have given an intelligent and intentional relinquishment or abandonment of it. (*Edwards v. Arizona* (1981), 451 U.S. 477, 482, 68 L. Ed. 2d 378, 385, 101 S. Ct. 1880, 1884; *Johnson v. Zerbst* (1938), 304 U.S. 458, 464, 82 L. Ed. 1461, 1466, 58 S. Ct. 1019, 1023; *People v. Swift* (1980), 91 Ill. App. 3d 361, 364, 414 N.E.2d 895.) The State bears the burden of proof on the waiver issue (91 Ill. App. 3d 361, 414 N.E.2d 895), and such a burden has been described as a "heavy" one (*People v. Taylor* (1979), 76 Ill. 2d 289, 310-11, 391 N.E.2d 366; *People v. Curtis* (1985), 132 Ill. App. 3d 241, 250, 476 N.E.2d 1162). It is for the trial court to determine if there has been a waiver, and the court need not be convinced beyond a reasonable doubt; rather, its

decision will not be reversed unless contrary to the manifest weight of the evidence. (*People v. Dailey* (1972), 51 Ill. 2d 239, 242, 282 N.E.2d 129.) The court will look to the facts and circumstances of the case, including the background, experience, and conduct of the accused. *Johnson v. Zerbst* (1938), 304 U.S.458, 82 L. Ed. 1461, 58 S. Ct. 1019.

At the pretrial suppression hearing, Officer O'Connor of the Chicago police department testified that he informed Lloyd of his *Miranda* rights as well as of his right to an attorney prior to a lineup. The officer indicated that, when defendant did not ask to speak to a lawyer, he put him into the lineup. Officer O'Connor admitted upon cross-examination that he did not specifically state in his report that he informed Lloyd of his right to an attorney at a lineup. The report instead indicated that defendant was informed of his rights and, according to the officer, this included his right to counsel at the lineup. Mr. Lloyd, in contrast, testified at the hearing that he was not informed he could have a defense attorney present at the lineup proceeding. The officer testified at trial that defendant informed him he did not need a lawyer.

■■■ In support of his position that he did not waive his right to counsel, defendant cites *People v. Curtis* (1985), 132 Ill. App. 3d 241, 476 N.E.2d 1162, *reversed* (1986), 113 Ill. 2d 136, 497 N.E.2d 1004, in which the court noted that "the crucible for determining whether there was a waiver of one's constitutional right to counsel is plainly not solely the words attributed to a defendant by a police officer." (132 Ill. App. 3d 241, 249, 476 N.E. 2d 1162, citing *People v. Dailey* (1972), 51 Ill. 2d 239, 241, 282 N.E.2d 129.) The court emphasized that it had to look to the facts and circumstances surrounding defendant's words to determine if he uttered them as an intentional abandonment of a constitutional right known to him. The *Curtis* defendant, after being given his *Miranda* warnings, indicated to police he did not want to give a statement until he saw his attorney but he had three and did not know which one to call at that time of the night. About a half hour later, he was informed he would have to stand in the lineup. Under these circumstances, the court found that the defendant did not know the police could not demand that he appear in the lineup without assistance of counsel. The court indicated that it was made to appear that defendant's participation in the lineup that night was inevitable whether or not he had counsel. Thus, the court held defendant did not waive his sixth amendment right to assistance of counsel at the lineup. (*People v. Curtis* (1985), 132 Ill. App. 241, 248, 476 N.E.2d 1162.) We believe the facts of *Curtis* are distinguishable. First, the defendant before us claims he was not informed at all

of his right to counsel, whereas the *Curtis* defendant did not so claim. There was testimony that the police informed defendant of his sixth amendment right and, therefore, whether defendant had this knowledge was a question for the trial court in ruling on the motion. Second, the *Curtis* court found the defendant made known his interest in obtaining an attorney even though ambiguity existed as to the point in time at which he would contact him. In contrast, here we find no evidence or allegations that defendant asked for an attorney or refused to go to the lineup. (See, *e.g., People v. Swift* (1980), 91 Ill. App. 3d 361, 364, 414 N.E.2d 895.) Police officers need not affirmatively admonish defendants of the right to counsel at every step in official proceedings; rather, once the defendant is aware of his right, if he chooses not to speak up and request counsel, the right is not violated. (*People v. Redmond* (1980), 85 Ill. App. 3d 599, 603, 407 N.E.2d 132, citing *People v. Burbank* (1972), 53 Ill. 2d 261, 266, 291 N.E.2d 161, *cert. denied* (1973), 412 U.S. 951, 37 L. Ed. 2d 1004, 93 S. Ct. 3017.) We therefore do not believe the trial court erred in denying defendant's pretrial motion to suppress evidence of the lineup identification.

Lloyd next contends the trial court denied his constitutional right to due process when the State's identification witness offered the Lloyd jury perjured testimony and where the final arguments compounded the prejudice by convincing the jury the witness did not lie to them. In testifying before the Lloyd jury, Craig Courts stated that he misidentified others as the offenders and confused details about his whereabouts prior to the shooting because he was afraid of the men who committed the crime. Later testifying before the Lasley jury, however, Courts admitted the reason he lied was because he was an "insider" in the scheme, that he was partially responsible for his employer's death, and that the men accused of the crime were his friends. The trial court denied Lloyd's subsequent motions to strike Courts' false testimony, to order the prosecution to recall Courts to the stand, for the court to recall Courts, and to call the court reporter as a witness so that she could read Courts' testimony before the Lasley jury to members of the Lloyd jury. The judge stated that the jury could evaluate Courts' credibility on the basis of the inconsistencies revealed during cross-examination. The judge allowed the defense to recall Courts, which it did, but defendant claims that this did not give him the opportunity to cross-examine the witness and question him as an adversary. He argues that in these circumstances he was put into the position of defending himself and prosecuting Courts at the same time, which violated his right to due process of law.

Defendant argues that false testimony cannot be used to obtain a conviction because "[t]he jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend." (*Napue v. Illinois* (1959), 360 U.S. 264, 269-70, 3 L. Ed. 2d 1217, 1221, 79 S. Ct. 1173, 1177.) Further, where false testimony affecting the credibility of a key prosecution witness "in any reasonable likelihood" may have influenced the jury's finding of guilt, defendant's conviction must be reversed and a new trial ordered. (*Giglio v. United States* (1972), 405 U.S. 150, 154, 31 L. Ed. 2d 104, 108, 92 S. Ct. 763, 766.) Defendant urges this court to find that, in light of *Napue* and *Giglio*, it was the responsibility of the prosecution to inform the jury of false testimony once it had knowledge of it. Defendant maintains that he also was prejudiced where the prosecutor, in closing arguments, was permitted to argue over objection that Craig Courts was a credible witness. Defendant emphasizes that this was a clear misstatement of the evidence adduced during Courts' cross-examination before the Lasley jury, yet allowed the prosecution to create an inference that Courts was not lying.

■ We find defendant's argument to be without merit. It is for the jury to evaluate the credibility of the witnesses and the reliability of their testimony. (*People v. Vriner* (1978), 74 Ill. 2d 329, 342, 385 N.E.2d 671, *cert. denied* (1979), 442 U.S. 929, 61 L. Ed. 2d 296, 99 S. Ct. 2858; *People v. Easter* (1981), 102 Ill. App. 3d 974, 980, 430 N.E.2d 612.) Although the trial court denied defendant's motions, it allowed the defense to recall Courts as a witness before the jury and question him regarding his earlier fabricated testimony. The Lloyd jury heard Courts admit his earlier misstatements as well as his involvement in the crime. They also heard his attempts to explain his reasons for the fabrications. We cannot say defendant was denied a fair trial because he was not permitted to cross-examine the witness. Although Lloyd urges that, under *Napue* and *Giglio*, it is the prosecutor's duty to insure a fair trial and to expose with specificity a prosecution witness' false statements to the jury, we do not believe the circumstances here present a basis for reversal.

Lloyd finally contends that his conviction should be reversed and he should receive a new trial because of the cumulative prejudice which resulted when the prosecution was permitted to elicit testimony and argue that another unrelated armed robbery and Lloyd's reputed gang membership were probative of his guilt. In support of this argument, Lloyd first refers to the testimony of Charles Ealy, who was

called by codefendant Lasley but whose testimony was heard by both juries. Under cross-examination, Ealy was permitted to testify that gang activity took place at an address which was the apartment building where Craig Courts' girlfriend lived, as did friends of the defendants. Lloyd's attorney vigorously objected but was overruled and told not to object anymore because this was not his witness. Ealy proceeded to explain that the neighborhood being discussed was "Black Gangster Disciple" territory. Lloyd argues that the court erred in denying counsel's objection to the testimony because gang activity had absolutely no bearing on the case.

Defendant also submits that the prejudice to him increased when Craig Courts was permitted to testify over objection that Lasley and Lloyd were known as "stickup men" who carried guns and were Black Gangster Disciples, a gang in the neighborhood identified by Ealy. Lloyd claims he was entitled to have his guilt or innocence determined with reference only to the crime charged, and any evidence tending to show he committed crimes or acts of misconduct distinct and unrelated to the one for which he was being tried, and for which there was no basis in the record, was incompetent and prejudicial. See *People v. Patterson* (1976), 44 Ill. App. 3d 894, 358 N.E.2d 1164; *People v. Curry* (1975), 25 Ill. App. 3d 637, 323 N.E.2d 778.

■■ ■ We do not believe the trial court committed reversible error in allowing this testimony into evidence. Evidence which goes to the motive for a crime is admissible even when it may reveal the commission of a separate crime. (*People v. McDonald* (1975), 62 Ill. 2d 448, 455, 343 N.E.2d 489; *People v. Clark* (1984), 124 Ill. App. 3d 14, 22, 463 N.E.2d 981.) LaFondraetta Lanier testified that she was present for a conversation between Lasley and Lloyd in which "they were discussing a previous robbery *** where someone, one of their friends were killed and the other one was taken into custody, and they were trying to figure out how to get the money to get the other person out." Ms. Lanier's testimony went directly to the question of motive here. As to the testimony regarding gang affiliation and reputation as "stickup men," we cannot say that the trial court abused its discretion in permitting it. When there is sufficient proof to show that membership is related to the crime charged or when the evidence of membership has probative value in reference to an issue properly in dispute, evidence of gang membership will be admissible. (*People v. Hairston* (1970), 46 Ill. 2d 348, 372-73, 263 N.E.2d 840, *cert. denied* (1971), 402 U.S. 972, 29 L. Ed. 2d 136, 91 S. Ct. 1658; *People v. Deacon* (1985), 130 Ill. App. 3d 280, 291, 473 N.E.2d 1354, *cert. denied* (1985), 474 U.S. 921, 88 L. Ed. 2d 260, 106 S. Ct. 253; *People v.*

*Lewis* (1976), 38 Ill. App. 3d 995, 998, 349 N.E.2d 528.) We view Ealy's testimony as directly related to the basis of Courts' expressed fear of defendants. Because Courts was the only identification witness who testified and because his credibility as a witness certainly was at issue, evidence relevant to that matter was properly admissible.

Lloyd adds that the State's closing arguments further circumvented his right to a fair trial. He maintains that the State provided additional details of the previous armed robbery for which Lloyd was charged but not tried. This was done even though the information was only to be used to demonstrate motive for the offense in this case, that is, to show that the offense was committed to obtain bail money for a friend. Further, he claims the prosecution compounded the error when the assistant State's Attorney charged that Lloyd was in an area where "everybody" was known as a Black Gangster Disciple and that he was willing to tell his former girlfriend he committed "stickups" for a living and relied on his reputation as a "stickup man" and "gang banger." Lloyd argues that by introducing facts, insinuations, and inferences which never were introduced into evidence, the prosecution destroyed the concept of a fair trial. He adds that the State made matters worse by arguing that Craig Courts did not lie regarding his involvement in the crime. Defendant cites instances where the prosecution stated that Courts said he did not want to be involved but, basically, knew the reputation of the defendants and was afraid not to do as they asked. Lloyd submits that he was not convicted by the evidence but, rather, by perjured testimony, fear of gangsters preying on a community, inferences, and prejudice. Although Lloyd notes that reversible error is committed where a prosecutor refers to a defendant as a habitual or professional criminal, or suggests that crime is defendant's occupation or business (*People v. Natoli* (1979), 70 Ill. App. 3d 131, 136, 387 N.E.2d 1096), we have reviewed *Natoli* and the cases upon which it relies and find that, in those cases, the conduct of the prosecutor was significantly more prejudicial than in the instant case.

■■ A prosecutor is permitted a great deal of latitude in closing arguments (*People v. Franklin* (1976), 42 Ill. App. 3d 408, 421, 355 N.E.2d 634), and absent a clear abuse of discretion, the determination of the trial court should be followed (*People v. Smothers* (1973), 55 Ill. 2d 172, 176, 302 N.E.2d 324). Comments on the evidence and all legitimate inferences therefrom are proper even if unfavorable to the defendant. (*People v. Weatherspoon* (1978), 63 Ill. App. 3d 315, 322, 379 Ill. App. 3d 847; *People v. Fleming* (1975), 36 Ill. App. 3d 612, 621, 345 N.E.2d 10.) The test of determining whether the prosecu-

tor's comments constitute reversible error is whether the remarks, considered in light of all the evidence, were a material factor in the conviction or whether, had they not been made, the jury might have reached a different result. (*People v. Panczko* (1980), 86 Ill. App. 3d 409, 413, 407 N.E.2d 988; *People v. Moss* (1977), 54 Ill. App. 3d 769, 777, 370 N.E.2d 89.) Additionally, there is a presumption that a jury will abide by the court's instructions to disregard testimony not admitted into evidence and, therefore, any harm incurred will be cured. *People v. El* (1980), 83 Ill. App. 3d 31, 41, 403 N.E.2d 547.

◼ We have reviewed the closing arguments and, based upon our examination of the record, we cannot say that defendant Lloyd was denied a fair trial due to comments by the State. A prosecutor is allowed to comment on the evidence and draw reasonable inferences from it. (*People v. Weatherspoon* (1978), 63 Ill. App. 3d 315, 379 N.E.2d 847.) We believe that the comments complained of either were based upon properly admitted testimony or were reasonable inferences from that testimony. Moreover, we do not find, as defendant suggests, that the State attempted to argue that Courts did not lie. Rather, the prosecution attempted to provide explanations for his fabrications. Even if some of the comments were improper, we do not believe they constituted a material factor in Lloyd's conviction or that, had they not been made, the jury would have reached a different result. (*People v. Panczko* (1980), 86 Ill. App. 3d 409, 407 N.E.2d 988.) Therefore, defendant Lloyd's conviction is affirmed.

◼ Defendant Willie Lasley contends that he was denied a fair trial when the prosecutor repeatedly argued facts not in evidence and performed other deliberate acts of misconduct during his rebuttal argument. We note in this regard that Lasley's attorney did not object at trial to most of the remarks about which he now complains. Neither did he specifically raise the matter in the post-trial motion. Under ordinary circumstances, defendant would be considered to have waived these issues on appeal. (87 Ill. 2d R. 604(d); *People v. Precup* (1978), 73 Ill. 2d 7, 16, 382 N.E.2d 227; *People v. Stamps* (1982), 108 Ill. App. 3d 280, 293, 438 N.E.2d 1282.) Where, however, the question of guilt is close and the evidence in question might have significantly affected the outcome of the case, or where the alleged error is so substantial that it reflects on the fairness or impartiality of the trial regardless of how closely balanced it is, then the plain error doctrine properly can be applied and the court will consider the alleged errors. (*People v. Walker* (1985), 109 Ill. 2d 484, 497, 488 N.E.2d 529, *cert. denied* (1986), ___ U.S. ___, 93 L. Ed. 2d 598, 107 S. Ct. 598; *People v. Sanders* (1983), 99 Ill. 2d 262, 273, 457 N.E.2d 1241; see also

87 Ill. 2d R. 615(a)). We will consider Lasley's allegations under this doctrine.

Defendant first maintains that the State argued evidence not previously presented to the jury and, in so doing, improperly implied that he had admitted his role in the murder, that he had been arrested for another crime, that a defense witness' testimony had been repudiated, and that he was a member of a group that committed robberies.

The first comment to which Lasley addresses himself concerns the testimony of LaFondraetta Lanier, Ivory Lloyd's former girlfriend. The prosecutor made reference to a conversation overheard by Lanier as follows:

"STATE: After the robbery and murder occurred, LaFondraetta again saw them on Hamlin. She said it was Monday, about 5 p.m. They were in Lloyd's car and Lloyd was telling Lasley to get rid of the car he had taken in a previous robbery or he'd get them caught. And they talked of the robbery and the murder that happened the day before. She was present.

DEFENSE: Objection.

COURT: Overruled.

STATE: She was present when Mr. Lasley and Mr. Lloyd were talking about what happened the day before, the fact that they had, they had to kill the guy.

DEFENSE: Objection.

DEFENSE: Objection, your honor.

COURT: Sustained.

STATE: The fact that they killed the guy.

DEFENSE: Objection.

DEFENSE: Objection, not the testimony.

COURT: Overruled.

STATE: She heard them ***. Do you think for one minute, do you think for one minute Mr. Lasley would be part of the discussion if he wasn't really involved? I don't think so."

 Lasley argues that Lanier testified separately on direct before each jury, and the testimony before the Lasley jury did not "remotely" resemble the discussion described. Defendant adds that the prosecutor continued to argue the point even after an objection to the testimony had been sustained. This point is arguable here, where the court first sustained an objection to argument that defendants had a conversation in which they indicated "they had to kill the guy" and, when the attorney repeated the phrase, the court then overruled the next objection. Nevertheless, the record demonstrates that Lanier did testify before the Lasley jury that she heard defendants talking about

getting rid of a car from a previous robbery and also about a robbery of the previous day. We agree with the State that any reference to the murder mentioned by the prosecutor, although not spoken by Lanier, was a proper inference from the testimony of Lanier and Courts, since the robbery and murder had occurred together. Moreover, in closing arguments, defense counsel stated Lanier's comments were not to be believed because there was no specific way they linked Lasley to "this case of this armed robbery and this murder at that grocery store where Mr. Salem was killed on Homan Avenue." Defendant cannot be heard to complain where the prosecutor's comments were provoked by defense counsel. *People v. Hudson* (1981), 102 Ill. App. 3d 346, 351, 430 N.E.2d 51; *People v. Galloway* (1979), 74 Ill. App. 3d 624, 628, 393 N.E.2d 608.

Lasley next complains that, although the assistant State's Attorney argued he was arrested on a charge other than murder when Courts identified him in the lineup, this was not the evidence presented to the jury. Defendant maintains that the evidence presented demonstrated that the police told Courts they had a man in custody for murder when he came to view the lineup. He argues that informing the jury of other crimes boosted the testimony of Lanier, who was the only witness to testify that Lasley had any prior criminal history. We have reviewed the record and do not find error in this instance. Defendant is correct in his assertion regarding Courts' testimony; however, we find no testimony by the police or other authorities to indicate Lasley was charged with murder when he appeared in the lineup. Although one officer testified he had occasion to arrest defendant on May 11, 1982, pursuant to the homicide investigation, he did not indicate that Lasley was arrested on a murder charge at the time he appeared in the lineup.

Defendant also complains that the prosecutor made an improper remark when he stated that Courts did not identify Charles Ealy as one of the offenders. At trial, Ealy testified that the police brought him to the victim's store on the morning of the incident where a person described as Courts indicated that he was not sure if Ealy was one of the perpetrators. In rebuttal arguments, the assistant State's Attorney stated Courts had said "That ain't him" when Ealy was brought in. An objection that such testimony was not in evidence was sustained. Defendant argues that information regarding the Ealy testimony was before the Lloyd, and not the Lasley, jury and, except for Ealy's testimony to the contrary, there was no testimony in the record as to what Courts had to say. The State maintains that Courts identified defendant and not Ealy as the perpetrator of the crime, so

that what he did in relation to the identification of Ealy was not a material factor in Lasley's conviction. Defendant submits that, even though this may have been an unintentional misstatement due to the double jury procedure and not a material factor in Lasley's conviction standing alone, it is but another instance of impropriety which, taken as a whole, denied him a fair trial.

Lasley also argues that the comments of the prosecutor regarding him as a member of an "armed robbery gang" created such severe prejudice that reversal and retrial is the only remedy. In rebuttal argument, the assistant State's Attorney spoke of Lasley as one of a gang involved in the "business of armed robbery," and commented that one of the members, Ricky Cunningham, already had been killed. Defendant's immediate objection to this characterization was sustained. Without objection, the attorney then stated, "Mr. Lasley, Mr. Lloyd, Mr. Cunningham, and Mr. Williams, Mr. Williams who got arrested in one of them. Mr. Williams became the problem here because of his arrest. They needed the bond money to get him out." Defendant maintains that not until this point did the jury know it was Williams who was previously arrested, and no mention has been made of Cunningham except by Lasley's mother who, when asked, responded that she knew him. Lasley submits that the evidence that he was part of a gang of armed robbers and that there already had been a death as a result of the group's actions created severe prejudice.

Where there is some evidence of motive to commit the crime, then motive is a proper subject to argue to the jury. (*People v. Huckstead* (1982), 91 Ill. 2d 536, 548, 440 N.E.2d 1248.) The testimony of LaFondraetta Lanier established that Lloyd was involved in a previous robbery and that both defendants needed bond money for a friend arrested in the robbery. We do not believe defendant was prejudiced by the comment that Williams was the friend about whom Lloyd and Lasley spoke regarding bond money, especially where the testimony revealed he played a role in the planning of the robbery but was not present during it. We cannot say that Lasley was so prejudiced by the argument that Cunningham was killed during the commission of an armed robbery that jury members could not heed the judge's instructions to disregard any improper comments. (*People v. El* (1980), 83 Ill. App. 3d 31, 41, 403 N.E.2d 547.) As to the comments that Lasley was in the "business of armed robbery," defense counsel made no objection, and there was evidence that he previously was involved in armed robberies. Even if considered to be error, the comments do not require reversal where, as here, "the evidence so clearly indicates the defendant's guilt that the verdict would not have been otherwise had

the improper remarks not been made." *People v. Poree* (1983), 119 Ill. App. 3d 590, 597, 456 N.E.2d 950, citing *People v. Jackson* (1981), 84 Ill. 2d 350, 360, 418 N.E.2d 739.

Lasley also contends the prosecutor suggested that the defense withheld information favorable to the State. The assistant State's Attorney informed the jury there were things he would have liked to answer about Lasley but was not permitted to do so due to the rules of evidence. He further indicated that Lanier had given few details in her testimony and noted, "Maybe she gave you very few details because of the rules of evidence." Defense counsel's objection to this statement was sustained. Lasley admits that defense counsel's remark at the beginning of his closing argument—"I sincerely and truly wish that you could ask me questions. I have to try to anticipate the questions you may have in your mind"—may have invited the rebuttal comments. Nevertheless, defendant argues that these comments should not have led to the prosecutor's comments about the rules of evidence. Relying on *People v. Connors* (1980), 82 Ill. App. 3d 312, 320, 402 N.E.2d 773, Lasley maintains that such comments have been found to be grounds for reversible error, particularly where the implication is clear that what is being kept out is information favorable to the State. He argues that the prosecutor's comment regarding Lanier indicated she knew much more about Lasley's involvement in the crime than she could testify to.

*Connors* can be distinguished from the instant case. There the assistant State's Attorney informed the jurors they could infer the content of a response to a question even though they were not permitted to hear the evidence. Additionally, the trial court overruled the defense objection to the remark, and the prosecutor continued to refer to the suppression of comments under the rules of evidence. In these circumstances, the reviewing court determined the prejudicial impact of the argument was increased. (82 Ill. App. 3d 312, 320-21, 402 N.E.2d 773.) Other cases cited by defendant also are distinguishable. In *People v. Starks* (1983), 116 Ill. App. 3d 384, 393, 451 N.E.2d 1298, the court cited authority for the proposition that a remark by a prosecutor that the rules of evidence prevented him from telling the jury about a witness constituted reversible error. Nevertheless, the court did not reverse defendant's conviction only based upon the prosecutor's statement but, rather, upon the cumulative impact of severe prosecutorial misconduct. In *People v. Clark* (1983), 114 Ill. App. 3d 252, 256, 448 N.E.2d 926, the court found reversible error where the prosecutor created an impression that defense counsel was hiding evidence. We do not believe the prosecutor's conduct in the case before

us implied that the defense prevented the jury from hearing evidence that would have helped the State's case or, further, that the remark standing alone was sufficient to constitute reversible error.

Lasley next suggests that the State bolstered its case by dismissing much of defendant's closing argument as mere tricks and attempts to mislead the jury. In support of this position, Lasley cites a portion of closing argument where the prosecutor stated that the phone call Craig Courts made on the morning of the murder was to his girlfriend and not to Ivory Lloyd, as defense counsel had argued. Lasley submits there was no evidence introduced to show it was his girlfriend whom he phoned and, further, the State had the same opportunity to ask the question of Courts. Defendant argues the prosecutor erred when he stated that defense counsel knew who Courts phoned because he had the police reports.

Defendant also finds improper the State's apparent attempt to "deceive" the jury by mentioning that there was no evidence to indicate the presence of Walter Rochelle as a person in the grocery store at the time of the shooting. Defendant argues this could be inferred because Courts testified two customers were in the store when the robbery occurred, an officer testified she obtained information from Mr. Rochelle while he was outside the store, and another officer testified that Mr. Rochelle viewed the lineup.

 We do not find error in this instance. We agree with the State that its comments were a proper response to those of defendant's counsel. (*People v. Vriner* (1978), 74 Ill. 2d 329, 344, 385 N.E.2d 671, *cert. denied* (1979), 442 U.S. 929, 61 L. Ed. 2d 296, 99 S. Ct. 2858.) Defense counsel did not take the opportunity on cross-examination to ask Courts whom he was calling but waited until closing argument to intimate he was phoning Lloyd to set up the robbery. The prosecution had every opportunity to elicit that Courts was phoning his girlfriend and did not do so. As neither party elicited the information, therefore, both were free to draw their own conclusions based upon the evidence. As to the remarks regarding Walter Rochelle, we agree with defendant that his presence could be inferred from the testimony presented; however, we do not believe that the State's comment would prejudice the jury where they heard the testimony about Rochelle's presence.

Defendant next claims the assistant State's Attorney bolstered the credibility of the State's witnesses by personally vouching for their testimony. For example, Lasley maintains that the attorney's comments effectively prevented the jury from believing the defense suggestion that Craig Courts identified Lasley as a perpetrator to

keep from being implicated in the crime himself. During closing arguments, the prosecutor spoke of Courts: "That's what he said, 'The State's Attorney told me to tell the truth.' And if you think for one minute we would try to hide or cover up something like that, risk our law licenses and our profession, I'd ask you to think again." A second example, defendant argues, was the State's bolstering of the testimony of LaFondraetta Lanier. Lasley's attorney wanted the jury to believe that Lanier was angry with Lloyd because their relationship was over and not because she was in fear of her life. However, the prosecutor stated to the jury, "I'll guarantee you she was plenty scared when he was trying to bust into her apartment on the 28th of November 1982." Defendant argues that these comments are highly prejudicial because they place the integrity of the State's Attorney's office behind the witnesses. *People v. Valdery* (1978), 65 Ill. App. 3d 375, 378, 381 N.E.2d 1217.

■■■ The prosecutor's comment about Courts was proper where defense counsel argued the State tried to prevent the jury from finding out about his involvement in the scheme. Courts testified that, when he informed the attorneys he had knowledge of the robbery plan, the prosecutors told him to "tell the truth." The comment about Lanier was a proper reply to defense counsel's statement that she was mad and not scared. Additionally, both comments appear designed to support the State's arguments regarding why the witnesses would not lie. See *People v. Grigsby* (1982), 111 Ill. App. 3d 38, 46, 443 N.E.2d 746.

Lasley next argues the prosecution improperly implied that a witness not called by either side would have testified favorably for the State. During his closing argument, the prosecutor stated that, had a witness to the crime seen anything different than what was testified to by Courts, the defense would have called him forward. Defendant maintains that, whether or not Walter Rochelle was in the grocery at the time of the incident, the jury learned from one of the officers testifying that he viewed the lineup. Neither side called him as a witness. During closing, the defense argued that Rochelle was in the store and witnessed the murder because "someone who doesn't see anything is not asked to come down to view a lineup."

■■■ It is improper to comment on a defendant's failure to call witnesses where the comment suggests that the witness would have testified unfavorably to the defendant and the witness is just as accessible to the State as to the defendant. (See *People v. Starks* (1983), 116 Ill. App. 3d 384, 393, 451 N.E.2d 1298.) However, we believe in this instance that defense counsel's comments implied that Rochelle

would have testified favorably for the defendant. The prosecutor's comment, therefore, was proper because it was in response to and invited by remarks of defense counsel. (*People v. Dixon* (1982), 91 Ill. 2d 346, 350-51, 438 N.E.2d 180; *People v. Vriner* (1978), 74 Ill. 2d 329, 344, 385 N.E.2d 671, *cert. denied* (1979), 442 U.S. 929, 61 L. Ed. 2d 296, 99 S. Ct. 2858.) Where comments of defense counsel on the State's failure to call a witness imply that the testimony would have been favorable to defendant, a response that if the defendant wished to call the witness he could have done so is proper as invited reply. *People v. Smith* (1982), 111 Ill. App. 3d 895, 907, 444 N.E.2d 801.

■■ Defendant next suggests the prosecutor's comment—"I think it's pretty clear. They [Lasley and his mother] have a vested motive in lying"—improperly gave the jury his opinion of Lasley's guilt. Further, he implied that, because defendant did not tell the police where he was at the time of the crime, he could not have been with his mother as she testified that he was. Defendant argues the attorney's opinions were not proper because he is not to offer his personal assessment of defendant's guilt. (*People v. Monroe* (1977), 66 Ill. 2d 317, 324, 362 N.E.2d 295; *People v. Clark* (1983), 114 Ill. App. 3d 252, 256, 448 N.E.2d 926.) Nevertheless, we view the comment as a proper inference from the evidence where, in addition, the alibi witness did not come forward with the information regarding the whereabouts of her son on the day of the crime until two years after the robbery and murder occurred and four days after the trial began.

■■ Defendant also maintains he was denied a fair trial when the prosecution played to the jurors' fears, thereby assuring his conviction. He argues that references to Courts were to a young man in a rough area who is trying to "make it," while Lasley was referred to as capable of doing a lot of harm and responsible for the way of life in an area where people live in fear and by intimidation. Defendant claims these remarks had nothing to do with his guilt or innocence in this case but, rather, made the jury aware of the dangers which would be faced by others if he remained out on the streets. Where the comments are supported by facts or where inferences are drawn from facts, it is proper to comment unfavorably upon the defendant, the violence and evil results of a crime, and the benefits of fearless administration of law. (*People v. Bryant* (1983), 94 Ill. 2d 514, 523-24, 447 N.E.2d 301.) The prosecutor's remarks in this regard fall within the recognized boundaries.

■■ We have reviewed all the remarks presented by defendant as prejudicial to his cause and find that they, neither individually nor cumulatively, amount to plain error. The comments were not so prejudi-

cial that they prevented defendant from receiving a fair trial or so flagrant that they threatened the deterioration of the judicial process. (*People v. Smothers* (1973), 55 Ill. 2d 172, 176, 302 N.E.2d 324.) We, therefore, will not reverse on this basis.

Defendant Lasley finally contends that the prosecution committed reversible error by withholding information that the only eyewitness able to identify him was a participant in the crime. He claims that because the prosecutors attempted to portray Courts as a helpful, disinterested citizen and mere victim of a crime rather than as a participant, Lasley's conviction was obtained through false evidence. Defendant claims his cross-examination of Courts did not cure the error because it cannot be said he could not have made more effective use of any information had he had it prior to trial. *People v. Keith* (1978), 66 Ill. App. 3d 93, 100-01, 383 N.E.2d 655, citing *People v. Elston* (1977), 46 Ill. App. 3d 103, 106, 360 N.E.2d 518.

As previously discussed, Courts testified he played a part in setting up the robbery and that he gave information of his involvement to the State two to three weeks prior to trial. Both sides made various motions after this information came out. In response, the assistant State's Attorneys indicated the first time Courts informed them he knew of defendants' plan to rob the store was during a conversation with Courts several days prior to trial when he spoke only of his prior knowledge of the plan and not of his involvement as a participant. The court denied defense motions and found that Courts' credibility was impeached by use of his statement and that it was for the jury to determine if he was lying.

Where a defendant fails to seek a continuance in order to investigate undisclosed testimony, any objection to it will be considered waived for purposes of review. (*People v. Ferguson* (1981), 102 Ill. App. 3d 702, 713, 429 N.E.2d 1321, *cert. denied* (1982), 459 U.S. 872, 74 L. Ed. 133, 103 S. Ct. 159.) Defendant claims he was surprised by Courts' testimony, which he argues should have been provided to him under Supreme Court Rule 412(a)(i) (87 Ill. 2d R. 412(a)(i)). The rule requires that memoranda of oral statements be provided to the defendant; however, the defendant must show the actual existence of the memoranda. (*People v. Kurena* (1980), 87 Ill. App. 3d 771, 776, 410 N.E.2d 277.) Absent a showing of an intentional tactic to prevent disclosure, there is no requirement that all oral statements in the State's possession or control be reduced to writing. (*People v. Szabo* (1983), 94 Ill. 2d 327, 348, 447 N.E.2d 193.) The State provided defendant with Courts' name and address several months prior to trial. Defendant did not seek to interview Courts.

Where defendant has neither interviewed Courts prior to trial nor sought a recess or continuance to investigate his testimony, we find that his claim of surprise and prejudice is negated as well as his objection waived. (*People v. Winfield* (1983), 113 Ill. App. 3d 818, 838, 447 N.E.2d 1029.) We cannot grant Lasley a new trial on this ground (*People v. Jones* (1983), 119 Ill. App. 3d 615, 625, 456 N.E.2d 926), and his conviction, therefore, is affirmed.

Accordingly, the judgments of the circuit court of Cook County are affirmed.

Affirmed.

McNAMARA, P.J., and RIZZI, J. concur.