THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RONALD ROSS, Defendant-Appellant.

First District (1st Division)    No. 79-2048

Opinion filed August 24, 1981.—Rehearing denied September 21, 1981.

John T. Theis, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Joan S. Cherry, and Gino P. Naughton, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

After a jury trial, defendant Ronald Ross was convicted of murder, attempt murder, aggravated battery and armed violence. The trial court granted defendant's motion in arrest of judgment as to the murder verdict, entered no judgment on the attempt murder and aggravated battery verdicts and entered judgment on the verdict of armed violence based upon aggravated battery. Defendant was sentenced to six years imprisonment. Defendant appeals, contending that (1) his conviction for armed violence based on aggravated battery must be reversed because the underlying felony of aggravated battery was enhanced to a felony because defendant was armed with a dangerous weapon and the fact that defendant was armed with a dangerous weapon was also used to raise aggravated battery, a Class 3 felony, to armed violence, a Class X felony; (2) the armed violence count of the indictment is insufficient as a matter of law; and (3) he was not proved guilty beyond a reasonable doubt.

Defendant lived with his wife, Patricia, in an apartment building at 8116 South Essex, in Chicago, Illinois. Defendant, his mother, his brother and his aunt owned the building. On September 11, 1978, defendant was in his apartment with his wife and his aunt, Margaret Randolph. Between 10 and 11 p.m., Theophilus Johnson, Archie Pritchett, Henry Johnson and Sheree Wright arrived at the building. Pritchett and the two Johnsons are brothers; Wright is Henry Johnson's girlfriend. Earlier in the day Pritchett had moved some furniture and clothing in the apartment of Elaine

Castile, a tenant in the building. Pritchett had previously been a tenant in the building and had been asked to move. Pritchett testified that he went to defendant's apartment only to explain that he was not moving into the building and he was going to remove his possessions from Castile's apartment.

Defendant answered the door and invited the group in. When they entered the living room, defendant, his wife and his aunt were already present. Defendant told the group to have a seat. Everyone sat down except Theophilus Johnson, who remained standing until defendant told him to sit down. Defendant's wife and aunt were drinking and appeared to be intoxicated.

The testimony of Pritchett, Theophilus Johnson and Wright regarding the incident was substantially the same: Defendant's aunt, Randolph, started an argument with Pritchett in which she accused him of tearing up her apartment. She began yelling loudly, and Pritchett had to raise his voice in order to respond. During this argument defendant went back and forth several times from the living room to the back bedroom where he was drinking beer and watching television. On one of the trips from the back room, defendant let several large dogs into the apartment. The dogs came into the living room and sniffed around. Theophilus Johnson was afraid of the dogs, so he went over to the door to leave. Defendant's wife got up and told Theophilus Johnson, "I will get it for you, babe." The key was in the lock and Theophilus Johnson had unlocked the door and opened it about half way, when defendant's wife pushed him against the wall and slammed the door. As she did that, she yelled "Don't open my Goddamn door." Theophilus Johnson never struck or touched defendant's wife. He did not have any type of weapon and did not reach for his pockets.

When Theophilus Johnson turned around, defendant was coming toward him down the hallway from the back bedroom. Defendant had a rifle in his hands and struck Theophilus Johnson in the right cheek with the butt of the rifle. This knocked Johnson back and defendant pointed the gun at Johnson's stomach and shot him. The bullet passed through Johnson's body and struck and killed defendant's wife.

Defendant's aunt testified that she and Pritchett began arguing as soon as the group arrived. She stated that no one else entered into the argument. Defendant came from the back bedroom and told Pritchett to quiet down or leave, but the argument continued. Defendant returned to the back bedroom. Randolph stated that at no time were the dogs let into the living room while the group was there. She further testified that when defendant's wife got up to open the door for Theophilus Johnson, Johnson grabbed her and started to struggle with her. Defendant's wife

then began screaming for defendant to help her. She stated that she heard a loud noise when Theophilus Johnson was pushing defendant's wife with his hand. Then Johnson and defendant's wife both fell down.

Defendant testified that he was in the back room watching football that night. He remained back there and became aware that guests had arrived only after he heard them arguing. He came out and told them to keep down the noise because he could not hear the television. Defendant testified that from the bedroom he heard his wife screaming and calling him. Defendant said he grabbed his mother's rifle and ran down the hall. As defendant approached, defendant saw Johnson push defendant's wife away from him and reach toward his pocket. "As he reached," defendant explained, "I fired." No other weapon was found in the apartment. Defendant denied striking Johnson with the butt of the gun.

Defendant first contends that his conviction for armed violence based on aggravated battery must be reversed for the reasons that (a) the underlying felony of aggravated battery was enhanced to a felony because defendant was armed with a dangerous weapon and (b) the fact that defendant was armed with a dangerous weapon was also used to raise aggravated battery, a Class 3 felony, to armed violence, a Class X felony.

Defendant was indicted for three counts of murder, one count of attempt murder, one count of aggravated battery (great bodily harm), one count of aggravated battery (deadly weapon), one count of armed violence based upon the underlying felony of murder and one count of armed violence based upon the underlying felony of aggravated battery. The count for armed violence based upon the underlying felony of aggravated battery did not indicate whether the battery was aggravated because of the infliction of "great bodily harm" or because of the use of a "deadly weapon." The jury found defendant guilty of murder, attempt murder, aggravated battery (great bodily harm), aggravated battery (deadly weapon) and armed violence. Judgment was entered only on the armed violence count. The verdict for armed violence did not indicate the felony upon which it was based. The jury was not instructed as to the armed violence count based upon the underlying felony of murder and a *nolle prosse* order was entered as to that count on the State's motion at the time of sentencing. Therefore, the verdict for armed violence was based upon the underlying felony of aggravated battery. We note that the armed violence verdict did not indicate whether the underlying felony of aggravated battery was based on the theory that defendant had used a deadly weapon or on the theory that defendant caused great bodily harm.

■■ In *People v. Haron* (1981), 85 Ill. 2d 261, 422 N.E.2d 627, our supreme court found that the armed violence statute could not be applied to a charge of aggravated battery where the battery was enhanced because of

the use of a deadly weapon. However, defendant here is not entitled to reversal of his conviction. The jury found defendant guilty of aggravated battery (deadly weapon) and aggravated battery (great bodily harm). Because the jury's armed violence verdict does not indicate which theory of aggravated battery constitutes the underlying felony for that verdict, it is presumed that the verdict is based upon any of the counts to which proof is applicable. (See *People v. Mimms* (1976), 40 Ill. App. 3d 942, 353 N.E.2d 186.) The proof here shows the infliction of great bodily harm. Therefore, the armed violence verdict could properly be based on the underlying felony of aggravated battery (great bodily harm), and we will not reverse defendant's conviction for armed violence.

Defendant's second contention is that the armed violence count of the indictment is insufficient as a matter of law.

Initially, we note that defendant failed to raise this issue either in a pretrial motion to dismiss the charge (Ill. Rev. Stat. 1979, ch. 38, par. 114—1(a)(8)) or in a post-trial motion in arrest of judgment (Ill. Rev. Stat. 1979, ch. 38, par. 116—2(b)(1)). An indictment attacked for the first time on appeal is to be reviewed under a different standard than if challenged either in a pretrial or post-trial motion. (*People v. Pujoue* (1975), 61 Ill. 2d 335, 335 N.E.2d 437.) "When attacked for the first time on appeal an information or indictment is sufficient if it apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct." *People v. Gilmore* (1976), 63 Ill. 2d 23, 29, 344 N.E.2d 456.

The armed violence count charged that defendant "committed the offense of armed violence in that he, while armed with a dangerous weapon, to wit: a handgun committed a felony defined by Illinois law, to wit: aggravated battery." Defendant argues that this count was insufficient as a matter of law because the elements of the offense of aggravated battery were not set forth in the count.

The elements of armed violence are two fold: (1) commission of a felony (2) while armed with a dangerous weapon. (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2.) The fact that elements of the crime of aggravated battery were not set forth in detail in the armed violence count did not render the indictment insufficient. It is not necessary that the elements of a "felony" be defined in an indictment charging armed violence. Even if it were necessary, the elements of aggravated battery (great bodily harm) were set forth in another count of the indictment. See *People v. Bauer* (1969), 111 Ill. App. 2d 211, 249 N.E.2d 859, *cert. denied* (1970), 397 U.S. 1022, 25 L. Ed. 2d 531, 90 S. Ct. 1260.

We find that the armed violence count of the indictment apprised defendant of the precise offense charged with sufficient specificity to

prepare his defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct.

Defendant's final contention is that he was not proved guilty of armed violence beyond a reasonable doubt, arguing that his use of force was justified because of (a) the alleged unlawful entry of the victim and his brothers into defendant's dwelling in a violent, riotous or tumultuous manner, and (b) his reasonable belief that such force was necessary to prevent imminent death or great bodily harm. We disagree.

There was no violent, riotous or tumultuous unlawful entry into or attack upon defendant's dwelling. (Ill. Rev. Stat. 1979, ch. 38, par. 7—2(a).) Theophilus Johnson and the others had been invited into the apartment. Defendant's use of force was not justified on that basis.

■■ Once the affirmative defense of self-defense or defense of another is raised by defendant, it becomes the State's burden to prove beyond a reasonable doubt not only all the elements of the offense, but also that defendant's act was not in self-defense or in defense of another. (*People v. Seiber* (1979), 76 Ill. App. 3d 9, 394 N.E.2d 1044; *People v. Baker* (1975), 31 Ill. App. 3d 51, 334 N.E.2d 249.) The elements of the defense are:

> "* * * (1) that force is threatened against a person; (2) that the person threatened is not the aggressor; (3) that the danger of harm is imminent; (4) that the force threatened is unlawful; (5) that the person threatened must actually believe: (a) that a danger exists, (b) that the use of force is necessary to avert the danger, (c) that the kind and amount of force which he uses is necessary; and (6) that the above beliefs are reasonable. There is a further principle involved, when, as in the instant case, the defendant uses deadly force. This principle limits the use of deadly force to those situations in which (a) the threatened force will cause death or great bodily harm or (b) the force threatened is a forcible felony." (*People v. Williams* (1965), 56 Ill. App. 2d 159, 165-66, 205 N.E.2d 749.)

When, in the judgment of the jury, any of the evidence produced at trial negates the existence of any one of these elements beyond a reasonable doubt, the State has carried its burden. *People v. Seiber.*

The evidence here showed that defendant's wife initiated the incident. The State's witnesses testified that Theophilus Johnson never struck or touched defendant's wife and that Johnson did not reach for his pockets. Defendant testified that when he arrived in the living room he saw Johnson struggling with defendant's wife, that Johnson reached toward his pocket and that he then fired one shot aimed at Johnson.

■■ The jury was not required to accept defendant's version of the incident. (*People v. Seiber.*) In addition, the reasonableness of an individual's belief that it was necessary to use deadly force to prevent death or great

bodily harm is a question of fact, the determination of which will not be disturbed upon review unless the evidence is so unsatisfactory as to justify a reasonable doubt as to guilt. *People v. Hill* (1977), 53 Ill. App. 3d 280, 368 N.E.2d 714.

We do not find that the evidence was so unsatisfactory as to justify a reasonable doubt as to defendant's guilt.

The judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

CAMPBELL, P. J., and McGLOON, J., concur.