THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KLUTZ WILKS, Defendant-Appellant.

First District (1st Division)   No. 86—1269

Opinion filed September 12, 1988.—Rehearing denied October 18, 1988.

70

Lee D. Bastianoni, of Elmhurst, and Steven G. Silets, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., and Lynda A. Peters, Assistant State's Attorneys, and Margaret M. Regan, Special Assistant State's Attorney, of counsel), for the People.

JUSTICE BUCKLEY delivered the opinion of the court:

Following a grand jury indictment for murder (Ill. Rev. Stat. 1983, ch. 38, par. 9—1) and armed violence (Ill. Rev. Stat. 1983, ch. 38, par. 33A—2) and a subsequent bench trial on those charges, defendant Klutz Wilks was convicted of voluntary manslaughter (Ill. Rev. Stat. 1983, ch. 38, par. 9—2) and sentenced to seven years in the

Illinois Department of Corrections. On appeal, defendant seeks a reversal of his conviction, contending, first, that his use of force was justified in defense of his person and, second, that the State failed to prove beyond a reasonable doubt the cause of death. Alternatively, defendant requests this court to reduce his conviction to involuntary manslaughter or modify his sentence or remand his case for a new sentencing hearing on the ground that the sentence is excessive. We affirm.

At trial, Leona Lee testified that on December 6, 1983, at approximately 7:45 p.m., she and her fiance, Vernon Jones, went to defendant's residence at 26 East 68th Street in Chicago. There, Lee requested that defendant allow her to enter the 6800 South Wabash Building, where Lee had previously rented an apartment from defendant, so that she could retrieve her mail and other belongings. Following a discussion concerning the change of locks on the front door of the apartment, Jones went to Lee's new apartment to obtain Lee's keys to the Wabash building. Upon his return, the three proceeded to 6800 South Wabash, where defendant requested that Lee and Jones accompany him to the rear of the Wabash building.

The State and defendant presented contradictory testimony as to the events thereafter. Lee testified that she refused to accompany defendant to the rear of the building and that Jones asked defendant to open the front door. Jones then grabbed defendant by the coat and repeated his request. Lee told Jones to "forget it," that they could summon the police, at which time they both turned to leave. Lee then heard three gun shots and observed fire coming from defendant, although she did not see defendant holding the gun.

In defendant's version of the incident, midway down the block to the Wabash building, Lee and Jones refused to follow defendant, became loud and abusive, and threatened to kick down the door. They then proceeded to the corner of 68th and Wabash, and defendant followed, pleading with them to return, at which time Jones grabbed defendant, choked him and lifted him off the ground, shouting, "He has caused you enough trouble, I am taking care of him now." Terrified and convinced his death was imminent, defendant attempted to flee but Jones held him and struck him twice. After falling to his knees, defendant managed to crawl to the corner, where he pulled out his gun and shot Jones.

Defendant's wife, Mrs. Marguritta Wilks, also testified on defendant's behalf. She stated that, from the closed inside door of their home at 26 East 68th Street, she observed the three individuals at the corner of 68th and Wabash. Jones, who was on top of defendant,

struck him twice in the neck and, when defendant attempted to get to his feet, Jones choked him. She then heard shots and saw Jones "twirl" and fall.

Officer William Guest of the Chicago police department arrived on the scene shortly thereafter and upon entering defendant's house was grabbed by defendant, who said, "That man jumped on me, was beating me." Once advised of his rights, defendant denied owning a gun but later showed the officer where the gun was located. Guest found three "spent rounds" and two "live rounds" still in the revolver. While in defendant's home, defendant told Guest that the incident occurred directly outside his door and that he did not know how Jones got across the street. Guest did not notice any bruises on or bleeding from defendant's face or hands nor was defendant's coat soiled or wet despite the snow on the ground.

Thereafter, defendant was taken to Jackson Park Hospital, where he was examined. Tests performed at the hospital revealed that defendant had an elevated enzyme level due to some type of trauma. Before defendant left the hospital, Assistant State's Attorney Dean Bastounes took a signed statement from defendant, which included a sentence that, "I went unconscious and I do not know anything about the actual shooting."

Jones was taken to Billings Hospital and spoke to Detective James O'Connell sometime after midnight. Jones related the following to Detective O'Connell: Jones grabbed defendant by the coat, pulled defendant toward him, and defendant lost his balance. Jones then released defendant and began to turn away, at which time defendant took the gun from his pocket and started shooting.

Jones remained in Billings Hospital and died 21 days later. Testimony of Dr. Robert Kirschner, the medical examiner who performed the autopsy, indicated that the deceased had two gunshot wounds to the left elbow region, the entrance and exit wounds of which were indistinguishable, and also one gunshot wound to the back.

■ Defendant initially contends on appeal that the State has failed to prove him guilty beyond a reasonable doubt, arguing that the evidence at trial established that his use of force was justified in self-defense. Once the affirmative defense of self-defense is raised by a defendant, the State has the burden to prove beyond a reasonable doubt that defendant's act was not 'in self-defense, although it will carry its burden when any of the evidence produced at trial negates an element of the defense. (*People v. Ross* (1981), 100 Ill. App. 3d 1033, 1038, 427 N.E.2d 955, 959; *People v. Seiber* (1979), 76 Ill. App. 3d 9, 394 N.E.2d 1044.) The elements of self-defense are defined in

section 7—1 of the Criminal Code of 1961:

"A person is justified in the use of force against another when and to the extent he reasonably believes that such conduct is necessary to defend himself *** against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself ***." Ill. Rev. Stat. 1983, ch. 38, par. 7—1.

■ ■ The trial court's findings on these elements raises a question of fact, which a reviewing court will not disturb unless the evidence supporting the finding is so unsatisfactory as to justify a reasonable doubt as to guilt. (*People v. Hill* (1977), 53 Ill. App. 3d 280, 285, 368 N.E.2d 714, 718; *People v. Ross* (1981), 100 Ill. App. 3d 1033, 1039, 427 N.E.2d 955, 959.) We find that the evidence at trial negates the elements of the imminence of harm and the reasonableness of defendant's belief that the use of deadly force was necessary to prevent death or great bodily harm to himself. The State presented evidence here showing that Jones' aggressions were limited to grabbing defendant's coat and that Jones was shot after he withdrew from those aggressions by turning to leave. Although defendant presented contradictory evidence that Jones was beating him at the time he shot Jones, the trial court was not required to accept defendant's version of the incident. *People v. Ross* (1981), 100 Ill. App. 3d 1033, 1038, 427 N.E.2d 955, 959.

Moreover, a rejection of defendant's version is supported by the evidence. The State impeached defendant at trial with a number of inconsistent statements, including defendant's statement that he was unconscious and unaware of the shooting. Additionally, defendant presented no physical evidence to corroborate his testimony. Witnesses who observed defendant after the incident did not notice any bruises or bleeding consistent with such a beating. Defendant's expert admitted that the only medical evidence offered supporting defendant's testimony that he had been beaten was his elevated enzyme level, which could have resulted from many causes, including one consistent with Jones' statement that defendant lost his balance and fell. Finally, evidence that Jones was shot in the back more plausibly suggests that Jones was shot after he turned to leave rather than after he twirled from the impact of the preceding shots.

■ Defendant next contends that the State has failed to meet its burden as to the cause of death, an essential element of the crime of manslaughter. (*People v. Bentley* (1934), 357 Ill. 82, 191 N.E. 230; Ill.

Rev. Stat. 1983, ch. 38, par. 9—2.) To sustain its burden, the State must establish beyond a reasonable doubt that defendant's acts caused the victim's death. (*People v. Weinstein* (1966), 35 Ill. 2d 467, 470, 220 N.E.2d 432, 434.) The State need not, however, prove that defendant's acts were the sole and immediate cause of death but must prove only that defendant's acts contributed to the death not occurring from an unconnected source. *People v. Schreiber* (1982), 104 Ill. App. 3d 618, 625, 432 N.E.2d 1316, 1321.

Both the State's and defendant's expert testimony indicated that Vernon Jones sustained two gunshot wounds to the left elbow region and one gunshot wound to the back that passed through the spinal column and lodged to the right of the spine. The experts agreed that an acute pulmonary thromboembolism that arose from blood clots in his legs prevented blood from getting to his lungs, resulting in Jones' death. The experts disagreed, however, as to the cause of the blood clots.

Assistant Medical Examiner Robert Kirschner performed the autopsy and testified as an expert for the State. In his expert opinion, the blood clots developed directly as a result of the paralysis induced by the gunshot wound to the back. Defendant's expert, Dr. Michael Kaufman, assistant professor of clinical pathology at Northwestern University Medical School, testified that paralysis does not increase the chances of embolus formation and that the thromboembolism could have developed spontaneously because Jones was morbidly obese, had coronary artery disease, had an enlarged heart, lungs and spleen, and had a sedentary occupation. The State's expert refuted these representations as to Jones' physical condition, showing that Jones, as a 43-year-old, 6-foot 8-inch tall male weighing 238 pounds, was only moderately obese; that the weight of Jones' lungs and spleen was considered normal at the autopsy; that the heart's weight was only a little above the maximum for a person of his weight; and that although the left ventricle of the heart was probably dilated on the basis of chronic hypertension, the right ventricle was dilated due to the pulmonary embolism.

In any event, a reasonable doubt does not exist because other factors may have contributed to decedent's death or because a person without decedent's medical history might not have died from the trauma. (*People v. Wieland* (1984), 123 Ill. App. 3d 576, 582-83, 462 N.E.2d 1256, 1261; *People v. Martin* (1983), 112 Ill. App. 3d 486, 499, 445 N.E.2d 795, 806.) The critical issue, therefore, is whether the paralysis directly contributed to the blood clots. The determination of this causal relationship between defendant's conduct and dece-

dent's death is a matter properly left to the trier of fact (*People v. Dillon* (1975), 28 Ill. App. 3d 11, 327 N.E.2d 225) and should not be disturbed unless the evidence is so unreasonable and improbable as to leave a reasonable doubt as to defendant's guilt. *People v. Molstad* (1984), 101 Ill. 2d 128, 133, 461 N.E.2d 398, 401.

■ We find that the evidence here supports the trial court's finding that the cause of death was the direct result of the gunshot wound and the resulting paralysis. Despite the conflicting testimony, the trial judge could have found the State's expert more credible. The testimony of the State's expert indicated that the paralysis inhibited blood in Jones' legs, causing the formation of blood clots. The origin of the clot was at most a few days old. Furthermore, the State's expert was certified in anatomic and forensic pathology and had performed over 3,500 autopsies, including 500 to 800 on shooting victims and several hundred cases where pulmonary emboli were present at the time of death. Defendant's expert, on the other hand, was not certified in forensic pathology and had performed only 250 autopsies, none of which involved shooting victims.

■ Defendant alternatively argues that the evidence adduced at trial establishes the offense of involuntary manslaughter rather than voluntary manslaughter. Involuntary manslaughter is an unintentional, unjustified killing committed by acts likely to cause death or great bodily harm. (Ill. Rev. Stat. 1983, ch. 38, par. 9—3.) By contrast, the crime of voluntary manslaughter, like murder, is an intentional, unjustified killing yet the law acknowledges the mitigating effect of human weakness and intense passion and thereby reduces the charge from murder to voluntary manslaughter in two circumstances: (1) where the person killed an individual without lawful justification and has acted under a sudden and intense passion resulting from serious provocation sufficient to excite the passion of a reasonable person, or (2) where a person intentionally and knowingly kills an individual believing the circumstances justified the killing but his belief is unreasonable. Ill. Rev. Stat. 1983, ch. 38, par. 9—2(b); *People v. Leonard* (1980), 83 Ill. 2d 411, 420, 415 N.E.2d 358, 363.

■ The evidence adduced at trial refutes defendant's contention that his acts were committed without any intent that death should result. Defendant, carrying a loaded gun, pointed it at Jones and fired three times at close range. These actions indicate intent and deliberate conduct, not recklessness. Furthermore, the trial court, in finding defendant guilty of voluntary manslaughter instead of murder, properly could have found on the evidence in this case that defendant was acting under an unreasonable belief that killing Jones was justified

under the circumstances, or that defendant was acting under an intense passion resulting from serious provocation.

■■ Finally, defendant contends that his sentence should be reduced because the seven-year penitentiary sentence for voluntary manslaughter, a probational offense with statutory imprisonment limits of 4 to 15 years, is excessive in his case. The standard of review for a sentence claimed to be excessive, as set forth by the supreme court, is whether the trial court exercised its discretion, and, if so, whether this discretion was abused. (*People v. Cox* (1980), 82 Ill. 2d 268, 275, 412 N.E.2d 541, 545; *People v. La Pointe* (1981), 88 Ill. 2d 482, 492, 431 N.E.2d 344, 348; *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 883.) Our review of the record indicates that the trial court did not abuse its discretion in the sentence imposed here. We initially note that the trial court followed the statutory framework prescribed for sentencing. The court was presented with a presentence report, considered evidence and information offered by defendant in mitigation, heard counsel's arguments as to sentencing alternatives, and afforded defendant an opportunity to make a statement on his own behalf. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—4—1(a).) In addition, the court complied with the statutory requirement, applicable whenever a court imposes a prison sentence for a probational offense, that the record indicate the court's opinion that imprisonment is necessary either to protect the public or to prevent injustice resulting from a deprecation of the seriousness of the offender's conduct. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—6—1.) Although the trial court here did not specifically use the statutory language noted above, substantial compliance is all that is necessary to comply with this statutory requirement. (*People v. Cox* (1980), 82 Ill. 2d 268, 281, 412 N.E.2d 541, 548; *People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882, 883.) The trial court's comments at sentencing that the victim was shot in the back and was paralyzed before his death reflects its opinion that granting defendant's probation request would deprecate the seriousness of the offense and would be inconsistent with the ends of justice.

■■ The evidence presented at trial and at the sentencing hearing also fails to demonstrate an abuse of discretion. In spite of the mitigating testimony offered at the sentencing hearing that defendant is 67 years of age, has been married for 30 years, has five children, is a minister of a church, and has a controllable medical condition, the evidence at trial indicates the seriousness of defendant's conduct. Defendant, carried a gun, shot the victim three times at close range, paralyzed and killed him. A trial court, in the course of the trial and

at the sentencing hearing, has an opportunity to balance these mitigating and aggravating factors and is in a better position to determine the punishment to be imposed than a court of review. (*People v. Cox* (1980), 82 Ill. 2d 268, 279-80, 412 N.E.2d 541, 547; *People v. Perruquet* (1977), 68 Ill. 2d 149, 159, 368 N.E.2d 822, 885.) Accordingly, based upon the aggravating and mitigating factors in the record and the court's compliance with statutory sentencing mandates, we cannot conclude that the trial court abused its discretion here by imposing a seven-year prison sentence.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL, P.J., and O'CONNOR, J., concur.