THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
HERBERT GANT, Defendant-Appellant.

First District (3rd Division)   Nos. 1—87—2530, 1—87—2546 cons.

Opinion filed August 15, 1990.

Randolph N. Stone, Public Defender, of Chicago (Bruce C. Landrum, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Gael O'Brien, and Adam D. Grosch, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

After a jury trial, defendant-appellant Herbert Gant (Gant) was found guilty of two counts of murder, two counts of attempted murder and home invasion. The trial court sentenced Gant to a natural life term of imprisonment for the murders of Edis and Eva Knox, to a 30-year term of imprisonment for home invasion and to a 15-year term of imprisonment for the attempted murders of Vernell Crawford and Dwayne Knox, with all of the sentences to be served concurrently.

On appeal, Gant argues that (1) his conviction for the murder of Eva Knox should be reversed where the State failed to prove beyond a reasonable doubt that his acts caused Eva Knox's death; (2) improper comments by the prosecutor during closing argument and rebuttal deprived him of his constitutional right to a fair trial; (3) imposition of a natural life sentence without any consideration of factors in mitigation violates the eighth and fourteenth amendments to the United States Constitution; and (4) he was improperly sentenced under the mandatory life statute.

The State presented the testimony of Vernell Crawford, Carolyn Knox, Chicago police officers Andrew Jones, Walter Berratta, Garrett Dubin, Thaddeus Melko, Joseph Bonadonna, Henry Freeman and Richard Fournier. The State also presented the testimony of

Doctor Yuksel Konacki, a forensic pathologist, and Doctor Hari Rao, Eva Knox's treating physician. Gant did not present any evidence on his behalf.

The evidence presented at trial revealed that Gant and Edis Knox married in 1978 and divorced in 1983. On July 30, 1985, Eva Knox, 78 years of age, resided at 908 West 71st Street with her daughters, Carolyn Knox and Edis Knox, and her grandchildren, Vernell Crawford, Loquita, DeShawn and Dwayne Knox. Vernell Crawford and Carolyn Knox recounted the events of July 30, 1985.

At approximately 10:15 p.m., Gant telephoned the Knox residence and demanded to speak with Edis Knox. Carolyn Knox informed Gant that Edis did not wish to speak with him. Thereafter, at approximately 10:30 p.m., Gant, armed with a 12-gauge shotgun, a .38 caliber revolver and a .25 caliber revolver, fired the shotgun into the back door of the Knox residence. Gant then went to the front of the house, broke a window and entered the house through the window. Gant proceeded to the bedroom where Carolyn Knox, her children, Eva Knox and Vernell Crawford attempted to hide.

As Carolyn Knox was under the bed, her children crawled under the bed and Vernell Crawford was on the floor near the entrance, Gant entered the bedroom, stating, "I got all you bitches, tonight." Gant removed a pistol from his belt and shot Vernell Crawford.

Edis Knox came out of hiding and asked Gant, "Herbert what are you doing, why are you bothering them, they are not bothering you." Gant responded, "You [sic] the one that started all this shit. You [sic] the one that I came for." As Edis ran to the back of the house, pleading for her life, Gant shot her seven times. After shooting Edis, Gant returned to the bedroom and examined Vernell Crawford as she pretended to be dead. Gant then fired the pistol behind the bed, striking six-year-old Dwayne Knox.

While Gant chased and shot Edis, her mother, Eva went out the front door of the house. Gant apprehended 78-year-old Eva, and as she prayed and pled for her life, he shot her at least four times. After shooting Eva, Gant reentered the house, stating, "All right Carol, it is your turn now, [sic] it is your turn." Gant attempted to open the bedroom closet door and said, "I know you are in there, I am going to find you." Thereafter, Gant heard police sirens and fled.

The police discovered Eva Knox, bleeding but still alive, lying on the threshold of the front door. Inside the home in the bedroom, the police found Vernell Crawford and Dwayne Knox suffering from gunshot wounds. On the enclosed back porch, Edis' body displayed no signs of life. A July 31, 1985, autopsy performed on Edis revealed

that she died as a result of multiple gunshot wounds. Two .38 caliber bullets were recovered from her body. The police determined that the bullets were fired from Gant's .38 caliber revolver. Vernell Crawford and Dwayne Knox recovered from their injuries.

Eva Knox's treatment for multiple gunshot wounds included surgery, during which two bullets were recovered. Her left leg was placed in a full leg cast due to a broken tibia. Eva's tibia was broken by the gunshot. On August 20, 1985, the hospital discharged Eva Knox, and she continued her recuperation at home.

At the time of her discharge, Eva took Diazide and Aldomet for hypertension. Prior to being shot, Eva was in good health, suffering only from high blood pressure. Upon her return home, on August 20, 1985, Eva Knox was sick, unable to eat or walk. Ultimately, on September 7, 1985, Eva was transported by paramedics to the emergency room at Englewood Hospital and died.

On September 8, 1985, Doctor Yuksel Konaki, a forensic pathologist and an assistant Cook County medical examiner, performed an autopsy on Eva Knox. Dr. Konaki opined within a reasonable degree of scientific certainty that Eva Knox died as a result of pulmonary embolism due to thrombophlebitis as a consequence of multiple gunshot wounds. Specifically, Eva Knox's immobility caused blood to stagnate in the deep veins of her legs. The stagnant blood formed blood clots in the deep veins of her legs. The blood clots dislodged, traveled to her lungs, lodged in the primary blood vessels or pulmonary arteries and caused her death. On cross-examination, Doctor Konaki testified that Eva's heart was normal in size and the blood vessels of the heart were open; there was no arteriosclerosis. Doctor Konaki recovered two .25 caliber bullets during the autopsy.

As previously stated, the jury found Gant guilty of two counts of murder, two counts of attempted murder and home invasion. The court sentenced Gant to natural life for the murder convictions, 30 years for home invasion and 15 years for each attempted murder conviction, with all sentences to be served concurrently.

Gant's first argument on appeal is that his conviction for the murder of Eva Knox should be reversed where the State failed to prove beyond a reasonable doubt that his acts caused Eva Knox's death. We disagree.

■ The criminal acts of a defendant need not be the sole and immediate cause of death. (*People v. Brackett* (1987), 117 Ill. 2d 170, 176, 510 N.E.2d 877, 880.) When the criminal acts of the defendant have contributed to a victim's death, the defendant may be found guilty of murder. (*Brackett*, 117 Ill. 2d at 176.) Causation is a ques-

tion of fact for the trier of fact. (*People v. Wilks* (1988), 175 Ill. App. 3d 68, 74-75, 529 N.E.2d 690, 694.) A reviewing court will not disturb that determination unless the evidence is so unreasonable, improbable, and unsatisfactory as to leave a reasonable doubt as to defendant's guilt. (*Wilks*, 175 Ill. App. 3d at 75.) A reasonable doubt does not exist merely because other factors may have contributed to the victim's death or because a person without the victim's medical history might not have died from the trauma. *Wilks*, 175 Ill. App. 3d at 74.

In reviewing defendant's conviction, when determining whether he has been proven guilty beyond a reasonable doubt, the standard is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Young* (1989), 128 Ill. 2d 1, 49, 538 N.E.2d 461, 472.

The State established beyond a reasonable doubt that Gant shot Eva Knox at least four times. The evidence demonstrates that as a result of the shooting she suffered gunshot wounds to the right cheek, right neck, right thumb, left forearm and left leg. In addition, she suffered from a fractured jaw, a fractured rib, a fractured left forearm and a fractured left tibia. Doctor Konaki testified that the cause of death was pulmonary embolism due to thrombophlebitis as a consequence of multiple gunshot wounds. The gunshot wounds, surgeries, immobilization and death were the direct consequences of Gant's acts. Accordingly, we find that the State proved beyond a reasonable doubt that Gant's acts caused Eva's death, notwithstanding her high blood pressure and use of prescription medication for the treatment thereof.

Stated differently, Gant's act contributed to her death. (*People v. Wilks* (1988), 175 Ill. App. 3d 68, 74-75, 529 N.E.2d 690, 694; *People v. Clark* (1984), 129 Ill. App. 3d 374, 378, 472 N.E.2d 814, 817-18.) In addition, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Gant next argues that improper comments by the prosecutor during closing argument and rebuttal deprived him of his constitutional right to a fair trial. Specifically, Gant asserts that in closing argument and during rebuttal, the prosecutor improperly commented on his failure to testify or to present any evidence and improperly inflamed and aroused the passions of the jury. The State responds that the defendant has waived these issues by his failure to object at trial and by failing to raise these issues in the motion for a new trial.

■■ The failure to raise these issues at trial and in the post-trial motion constitutes a waiver of the issues on appeal. (*People v. Young* (1989), 128 Ill. 2d 1, 46, 538 N.E.2d 461, 471.) Had the issues not been waived, this court would not find that the comments deprived Gant of his constitutional right to a fair trial.

■■ In closing argument, a prosecutor is accorded wide latitude and the scope of permissible argument is within the sound discretion of the trial judge. (*People v. Lasley* (1987), 158 Ill. App. 3d 614, 625, 511 N.E.2d 661, 670.) Complained-of remarks must be examined in the context of both the State's and the defense's arguments; but all remarks made in the closing argument must be based upon the evidence presented or reasonable inferences thereof. *People v. Cisewski* (1987), 118 Ill. 2d 163, 175-76, 514 N.E.2d 970, 976; *Lasley*, 158 Ill. App. 3d at 625.

■■ It is improper for the State to comment on the failure of the defendant to call a witness or to present evidence. (*People v. Wills* (1986), 151 Ill. App. 3d 418, 421, 502 N.E.2d 775, 777-78.) Having reviewed the prosecutor's comments in context, we do not agree with the defendant that the prosecutor was reminding the jury that the defendant presented no evidence to rebut the testimony of Dr. Konaki. The prosecutor's comments in context were as follows:

"Now, the defendant, the defense attorney is going to stand up here and say I don't know why she died. It could have been those pills she was taking or wasn't taking. Well, we know why she died. She died because this man blasted her six times with a handgun, that is why she died.

Now, she didn't die on the spot, she didn't die in the hospital, she died as she was being treated as an out patient, that is why she died.

Now, Dr. Konaki is the only person that testified that looked at that body. He took slides of the blood clots, he looked at some strains that were clotted, the arteries which were clotted. And after examining all that he was of the mind that the death of Eva Knox was due to gunshot wounds. And there is going to be no testimony to rebut or contradict that. The only expert in pathology who has testified has been Dr. Konaki who said her death is a direct result of gunshot wounds."

In context, the comments do not constitute error. It is permissible to comment on the uncontradicted nature of the evidence for the purpose of demonstrating the absence of any evidentiary basis for defense counsel's argument. (*People v. Dixon* (1982), 91 Ill. 2d 346,

350, 438 N.E.2d 180, 183.) Doctor Konaki was the only expert in pathology to testify. Moreover, even if improper remarks are made by the prosecutor, these remarks will be considered harmless error if there is overwhelming evidence of guilt, and a new trial will not be granted unless those remarks are so prejudicial that they materially contributed to defendant's conviction. *People v. Lloyd* (1981), 93 Ill. App. 3d 1018, 1025, 418 N.E.2d 131, 136.

Defense counsel stated, in part, during closing:

"Most certainly the death to Eva Knox, the older woman did not occur that night, did not occur in the hospital, it occurred at home, in September. She was discharged from that hospital, she was placed on a medication that had only to do with her hypertension. She wasn't given medication or treatment for wounds, she was told to call the hospital or you can come back in a month and we will look you over. It is apparent that they would have never let that woman out of the hospital if she was in danger of dying.

Now, we had two doctors here to testify regarding the cause of death. And it is a crucial opinion because if she died as a result of the gunshot wounds then it is a murder charge. If she didn't die as a result of the gunshot wounds it is an attempt murder. And this is not to just pick at little things, it is as important for you as jurors to not be stampeded by the grossness, by the sheer horror of that night into saying well, if he killed this person he wounded this person why should we worry about it, let's give him this murder too.

\* \* \*

The doctors saying probably caused her death, might have caused her death, I think it caused her death is not the same as a doctor saying this caused her death.

There was one real difference in the testimony of the two doctors. And I am sure that the doctor, I think you would be sure too, that any doctor going through a medical school has a course in pathology.

\* \* \*

And the first doctor who testified said that he found some fibers that indicated clotting and he looked at them under a microscope. But the second doctor told you that not only should there be fibers there should be these blood platelets, clumps of cells. The first doctor never told you that he saw these things.

The second doctor also told you that a person who has hy-

pertension must take certain medication. And if they take too much of it, it can cause blood clots to form.

So, the issue now becomes did she die from blood clots or did she because she has hypertension simply have a heart attack, which both doctors concede is quite possible, we are talking about a lady 78 years old."

In rebuttal, the prosecutor stated:

"This is what caused her death, these two bullets here and the two that are in here, that is what caused her death.

The only evidence you have heard about her cause of death and what killed her was from Dr. Konaki. Dr. Konaki is an expert, he's been with the medical examiner's office for 14 years. He said she died as a result of a blood clot that formed in her leg and traveled through her heart and lodged in the pulmonary artery, and that is what killed her. The person that caused the blood clot is the defendant because as the doctor said when you immobilize somebody you cause a great likelihood of a blood clot forming. She lived for 78 years without a blood clot killing her, she died within about five weeks of him putting four bullets into her. He immobilized her, he is the one that did that, that is why she couldn't move. *** He caused her to be immobilized and caused her death."

We find that these remarks in response to defense counsel's arguments constitute permissible comments on the evidence presented. It is permissible for the prosecutor to present his theory of the case to the jury so long as the theory is based upon the evidence and reasonable inferences therefrom. *People v. Cisewski* (1987), 118 Ill. 2d 163, 175-76, 514 N.E.2d 970, 976; *People v. Yates* (1983), 98 Ill. 2d 502, 532, 456 N.E.2d 1369, 1384.

Gant also argues that additional comments during rebuttal were inflammatory, inaccurate, and designed to mislead the jury and arouse their fears and passions. The comments were as follows:

"It is just like, ladies and gentlemen, if someone goes out and plants a bomb. And he puts a trip wire on it so when someone comes by and trips the wire, the bomb goes off and then some other poor innocent soul coming walking down the street and he trips the wire and the bomb goes off and kills two people. It is not the fault of the man who tripped the wire, it is the guy who planted the bomb, he is the killer. And in this case the bombs were planted, he planted four bombs into her body and caused her to be immobilized and caused her death. And the only medical expert you heard from that exam-

ined the body told you that the cause of death was the blood clot as a result of multiple gunshot wounds."

On review, the trial court's determination of the propriety of the argument will be followed absent a clear abuse of discretion. (*People v. Lasley* (1987), 158 Ill. App. 3d 614, 625, 511 N.E.2d 661, 670.) If improper remarks are made by the prosecutor, these remarks will be considered harmless error if there is overwhelming evidence of guilt, and a new trial will not be granted unless those remarks are so prejudicial that they materially contributed to defendant's conviction. (*People v. Lloyd* (1981), 93 Ill. App. 3d 1018, 1025, 418 N.E.2d 131, 136.) Improper argument justifies reversal only when the statements result in substantial prejudice or serve no purpose other than to inflame the jury. *People v. Terry* (1984), 99 Ill. 2d 508, 517, 460 N.E.2d 746, 750.

Had there been no waiver of this issue we would hold that while the bomb analogy was inflammatory, the jury heard overwhelming evidence of his guilt, and the comments were not so prejudicial so as to have materially contributed to Gant's conviction.

Gant also argues on appeal that his sentence imposed under section 5—8—1(a)(1)(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1)(a)(1)(c)) violated the eighth and fourteenth amendments to the United States Constitution because the statute mandates a natural life sentence and precludes consideration of factors in mitigation. The Illinois Supreme Court has implicitly rejected that contention. (*People v. Taylor* (1984), 102 Ill. 2d 201, 206, 464 N.E.2d 1059, 1062; *People ex rel. Daley v. Strayhorn* (1988), 119 Ill. 2d 331, 336, 518 N.E.2d 1047, 1050.) Also, this court has rejected that claim. (*People v. Rodriguez* (1985), 134 Ill. App. 3d 582, 592-93, 480 N.E.2d 1147, 1153-54.) Accordingly, we reject the argument.

Finally, Gant argues that he was improperly sentenced under the mandatory natural life statute. Specifically, he argues that he should have been sentenced under section 5—8—1(a)(1)(b) (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(1)(b)), which allows the court discretion in imposing a natural life sentence, instead of sentencing defendant under section 5—8—1(a)(1)(c) (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(1)(c)), which requires, at a minimum, mandatory life imprisonment.

Gant asserts that this statutory scheme violates the due process and equal protection clauses of the Illinois and United States Constitutions, as well as article I, section 11, of the Illinois Constitution, which provides that all penalties shall be determined both ac-

228

cording to the seriousness of the offense and with the object of restoring the offender to useful citizenship. The Illinois Supreme Court has rejected the claim that this provision violates article I, section 11. *People v. Taylor* (1984), 102 Ill. 2d 201, 206, 464 N.E.2d 1059, 1062.

Sections 5—8—1(a)(1)(b) and (a)(1)(c) provide:

"A sentence of imprisonment for a felony shall be a determinate sentence set by the court under this Section, according to the following limitations:

(1) for murder, *** (b) if the court finds that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty or that any of the aggravating factors listed in subsection (b) of Section 9—1 of the Criminal Code of 1961 are present, the court may sentence the defendant to a term of natural life imprisonment, or (c) if the defendant has previously been convicted of murder under any state or federal law or is found guilty of murdering more than one victim, the court shall sentence the defendant to a term of natural life imprisonment." Ill. Rev. Stat. 1985, ch. 38, pars. 1005—8—1(a)(1)(b), (a)(1)(c).

One of the aggravating factors in the death penalty statute is that the defendant has been convicted of murdering two or more individuals under subsection (a) of the section or under any law of the United States or of any State which is substantially similar to subsection (a) of this section regardless of whether the death occurred as the result of the same act or of several related or unrelated acts so long as the deaths were the result of either an intent to kill more than one person or separate premeditated acts. Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)(3).

Section 5—8—1(a)(1)(c) mandates the imposition of a natural life sentence for the murder of two or more persons. (*People ex rel. Daley v. Strayhorn* (1988), 119 Ill. 2d 331, 336, 518 N.E.2d 1047, 1050.) Even when in apparent conflict, statutes, insofar as is reasonably possible, must be construed in harmony with one another. (*People v. Maya* (1985), 105 Ill. 2d 281, 287, 473 N.E.2d 1287, 1290.) Where two statutes conflict, the more recent will abrogate the earlier to the extent that they are inconsistent. *Johnson v. State Electoral Board* (1972), 53 Ill. 2d 256, 259, 290 N.E.2d 886, 888.

Whereas section 5—8—1(a)(1)(b), a general provision as to when a defendant may be sentenced to life imprisonment, was amended July 1974, section 5—8—1(a)(1)(c), effective July 1980, specifically requires a natural life sentence when a defendant has been convicted of two

or more murders. A statute must be interpreted so as to achieve a logical result. (*Budka v. Board of Public Safety Commissioners* (1983), 120 Ill. App. 3d 348, 352-53, 458 N.E.2d 126, 130.) We therefore conclude that Gant was properly sentenced to a natural life sentence pursuant to section 5—8—1(a)(1)(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(1)(c)).

Accordingly, we affirm the convictions and sentences.

Affirmed.

WHITE and FREEMAN, JJ., concur.