THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICHARD SWANSON, Defendant-Appellant.

First District (6th Division)   No. 1—88—3571

Opinion filed March 15, 1991.

Randolph N. Stone, Public Defender, of Chicago (Shelton O'Neal Green and Alison Edwards, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Janette Sublett, and Neera Walsh, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE RAKOWSKI delivered the opinion of the court:

Defendant, Richard Swanson, was charged by indictment with two counts of first degree murder. Following a bench trial, he was convicted of second degree murder and sentenced to three years' probation with 26 weekends in the Cook County jail. On appeal, defendant contends that his conviction must be reversed because his use of force against the victim was justified. Additionally, he argues that the trial court was precluded from convicting him of second degree murder when he had been charged with first degree murder.

On December 18, 1987, defendant left work and went home to his room in a northside Chicago hotel. Sometime later, Timothy Bowden arrived at defendant's room, and the two then went to a party in the hotel's lounge. They were joined by Cathy Sadler about 11 p.m. Ms. Sadler had known defendant for a few weeks and had also previously met the victim. The three then ate and drank together for awhile. After the victim made a pass at Ms. Sadler, she and defendant left the lounge and went to defendant's room on the second floor.

The victim came up to defendant's room while defendant and Ms. Sadler were there. The victim was banging and kicking the door, say-

ing that he wanted to retrieve some of his belongings from the room. However, defendant would not let the victim inside and finally called the front desk of the hotel to have someone come and remove the victim.

A short time later defendant left his room to purchase beer and cigarettes. While buying cigarettes he met the victim, and the two returned to defendant's room. There the victim again made a pass at Ms. Sadler, and defendant asked the victim to leave. Ms. Sadler consented to go into the bathroom with the victim so that the two could talk. The victim made a pass at her a third time, and at one point, he grabbed her hand and attempted to force her to leave the room with him.

When the victim refused to leave after another request by defendant, defendant reached for the telephone. A struggle ensued as the victim also reached for the telephone. The telephone fell to the floor, and defendant told Ms. Sadler to call the desk and have them send someone to the room.

The victim then began picking up some of his clothes from the room. As he walked past a table, he picked up a prescription bottle containing defendant's Valium and told defendant that he would send defendant to prison and that the Valium would be the evidence.

Defendant then stood between the victim and the door and told the victim that he had "another thin[g] [*sic*] coming" if he thought he was going to take defendant's belongings. Defendant and the victim then struggled, and defendant came from behind the victim and put his arm around the victim's throat. Defendant asked Ms. Sadler to call the front desk again, which she did. When she turned around, defendant and the victim were on the floor. With his arm still around the victim's neck, defendant told Ms. Sadler to go to the front desk to get help. As she left the room, she heard defendant threaten the victim.

When the victim stopped struggling, defendant released the chokehold and dragged the victim out into the hallway. Defendant claimed that he did this to avoid any more fighting. He acknowledged that the victim never even hit him during the struggle, and he disclaimed any intent to kill or harm the victim.

█ Defendant argues on appeal that his conviction should be reversed because, even though the victim died of strangulation, his use of force against the victim was justified. Defendant attempts to turn this single issue into four separate issues by arguing different theories under which his use of force might be justified. Regardless of the theory, however, this determination is a question of fact which will not be

disturbed unless the evidence is so improbable or unsatisfactory as to raise a reasonable doubt of guilt. *People v. Price* (1987), 158 Ill. App. 3d 921, 926, 511 N.E.2d 958; *People v. Zolidis* (1983), 115 Ill. App. 3d 669, 674, 450 N.E.2d 1290.

Defendant relies on the affirmative defenses set forth in article 7 of the Criminal Code (Ill. Rev. Stat. 1987, ch. 38, pars. 7—1, 7—2, 7—3, 7—6) in support of his argument that his use of force was justified. Specifically, he relies on section 7—3 (deadly force justified if reasonably believed necessary to prevent commission of forcible felony); section 7—2 (use of force justified in defense of dwelling where reasonably believed necessary); section 7—1 (deadly force justified if reasonably believed necessary to prevent death or imminent bodily harm to self or other or to prevent the commission of a forcible felony); and section 7—6 (deadly force justified in making arrest where there is reasonable belief that such force is necessary to prevent death or great bodily harm).

■ Despite the section or circumstances under which the defense of use of force can be raised, each section requires that the use of force be reasonably believed necessary in order to be justified. Thus, once the defense is raised, a question of fact arises as to whether the belief was reasonable, and the State bears the burden of proving that defendant's use of force was not justified. *People v. Wilks* (1988), 175 Ill. App. 3d 68, 72, 529 N.E.2d 690.

■ Although defendant raised some evidence in support of his claim that his use of force was justified, the State presented proof beyond a reasonable doubt that it was not. In order to justify deadly force, the defendant must show that unlawful force was threatened against him; he believed the danger of harm was imminent; force was necessary to avert the danger; and the amount of force was necessary. In the case of self-defense, defendant must additionally show that he was not the aggressor. *People v. Alcazar* (1988), 173 Ill. App. 3d 344, 349, 527 N.E.2d 325.

■ In the instant case, we note that defendant invited the victim into his room, where the victim had some personal belongings to retrieve. Moreover, although the victim made a verbal threat, nothing in the record before us suggests that the victim threatened defendant with the use of unlawful force. Finally, defendant's act of positioning himself between the victim and the door suggests an aggressive rather than a defensive posture. We, therefore, conclude that the evidence was not so improbable, impossible or unsatisfactory as to raise a reasonable doubt of guilt.

Defendant's final contention is that the court was precluded from finding him guilty of second degree murder because second degree murder is not a lesser included offense of first degree murder, and he did not request consideration of the lesser offense. Defendant points to the following language of the second degree murder statute to support his argument:

"In a jury trial for first degree murder in which evidence of either of the mitigating factors *** has been presented and the defendant has requested that the jury be given the option of finding the defendant guilty of second degree murder, the jury must be instructed ***." (Ill. Rev. Stat. 1987, ch. 38, par. 9—2(c).)

Defendant argues that this language provides that a jury may be given the option of finding defendant guilty of second degree murder only if defendant has requested it, and that it is arguable, at least, that a defendant in a bench trial must also make that election as a prerequisite to a finding of guilty of second degree murder. Defendant cites Steigmann, *First and Second Degree Murder in Illinois*, 75 Ill. B.J. 494 (1987) for this proposition, as well as O'Neill, *An Analysis of Illinois' New Offense of Second Degree Murder*, 20 J. Marshall L. Rev. 209 (1986).

■ The flaw in defendant's argument is that second degree murder is a lesser included offense of first degree murder. While Professor O'Neill argues to the contrary, the Illinois Supreme Court in examining murder and voluntary manslaughter under the old law stated as follows:

"An 'included offense' is defined in Illinois as an offense which '[i]s established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged ***.' (Ill. Rev. Stat. 1981, ch. 38, par. 2—9(a).) The offenses of murder, voluntary manslaughter and involuntary manslaughter are distinguished only by the diminishing degree of mental culpability necessary to sustain each. While murder and voluntary manslaughter (unreasonable belief) both require proof of intent or knowledge (Ill. Rev. Stat. 1981, ch. 38, pars. 9—1(a)(1), 9—1(a)(2), 9—2(b)), the offense of voluntary manslaughter is committed only when the defendant acts with an unreasonable belief that the killing was justified. This mental state is considered less culpable, and, as such, voluntary manslaughter is considered an included offense of murder." (*People v. Hoffer* (1985), 106 Ill. 2d 186, 194, 478 N.E.2d 335.)

(See also *People v. Reddick* (1988), 123 Ill. 2d 184, 196, 526 N.E.2d 141 (unreasonable belief of justification and intense provocation are less culpable mental states).) This same reasoning, of course, applies to first and second degree murder.

■ Moreover, by its unambiguous language section 9—2(c) (Ill. Rev. Stat. 1989, ch. 38, par. 9—2(c)) applies to jury trials only. The omission of similar language with respect to bench trials was not unintentional. This is so because a jury, once defendant has requested consideration of second degree murder, "must be instructed that it may not consider whether the defendant has met his burden of proof with regard to second degree murder until and unless it has first determined that the State has proven beyond a reasonable doubt each of the elements of first degree murder." (Ill. Rev. Stat. 1989, ch. 38, par. 9—2(c).) These considerations do not apply to a bench trial.

■ Neither can defendant find comfort from the Steigmann article. Steigmann states:

"Accordingly, some time before closing argument in a bench trial, the trial judge should have the defendant and defense counsel elect on the record whether they are asking the trial judge to consider second degree murder as an option. Without such an election appearing [on the] record, a verdict in a bench trial finding a defendant guilty of second degree murder may well be subject to reversal as a denial of the defendant's procedural rights under the new statute." (75 Ill. B.J. at 497.)

As we have previously stated, because defendant was not tried by a jury and because second degree murder is a lesser included offense of first degree murder, defendant was not entitled to such an election. However, even if he were, we believe that Steigmann's concerns were satisfied when the court instructed the defendant during admonishments concerning his jury waiver that "I decided [*sic*] whether or not you are innocent or guilty of first degree murder or anything less than that, which would include second degree murder ***."

Finally, we comment upon what, in our view, is the paradoxical nature of defendant's argument. He argues that he should be allowed to "roll the dice." Clearly, we understand why a defendant would take that position under the old law, but we fail to see why he would do it presently. In effect, defendant is saying that if he should be found guilty of first degree murder, he does not want the judge to consider second degree murder. In this vein, we agree with Professor O'Neill when he quotes the principle set forth in *People v. Taylor* that " '[a] defendant being tried of murder at a bench trial had absolutely no right to restrict the trial judge from considering the possibility of a

finding of voluntary manslaughter.' " (20 J. Marshall L. Rev. at 230, quoting *People v. Taylor* (1967), 36 Ill. 2d 483, 224 N.E.2d 266.) O'Neill adds:

"Even though the new Act states that a first degree murder defendant should have an absolute right to prevent a jury from considering second degree murder, it is silent regarding a bench trial. Judge Steigmann argues that the defendant at a bench trial should have a similar right. Symmetry would appear to support this, although in reality it might appear foolhardy for a defendant to attempt to prevent a judge from finding that the murder was accompanied by mitigating circumstances." 20 J. Marshall L. Rev. at 230.

■ Additionally, because the trial judge had already found defendant guilty of first degree murder, it is difficult to understand how defendant was prejudiced by the court's consideration of mitigating factors and subsequent finding that he was guilty of second degree murder. Haddad, *Second Degree Murder Replaces Voluntary Manslaughter In Illinois: Problems Solved, Problems Created,* 19 Loy. U. Chi. L.J. 995 (1988).

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

EGAN and LaPORTA, JJ., concur.